[No. B086381. Second Dist., Div. Six. Jan. 16, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN KEITH BURY, Defendant and Appellant.

## COUNSEL

Lauri K. Brown, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Gustavo Gomez, Deputy Attorneys General, for Plaintiff and Respondent.

Michael D. Bradbury, District Attorney (Ventura), and Kevin G. Denoce, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Brian Keith Bury appeals his conviction by a jury of felony driving under the influence of alcohol. (Veh. Code, § 23152, subd. (a).)[1] He contends his conviction must be reversed due to the improper admission of the results of a preliminary alcohol screening (PAS) test administered to him at the scene of his arrest. A PAS device is a breath-testing instrument used to determine either the presence or concentration of alcohol in a person's blood. Such device may be used by police, but is not required, in order to make a preliminary determination of sobriety prior to arrest. (§ 23157, subd. (h).) A PAS test is differentiated from mandated chemical testing of a suspect's blood-alcohol level (BAL) after a lawful arrest under the implied consent law. (§ 23157, subd. (a)(1); 72 Ops.Cal.Atty.Gen. 226, 227, 229 (1989).)

We rule the PAS test evidence introduced at appellant's trial was admissible.

---

[1]All statutory citations refer to the Vehicle Code unless otherwise stated.

## FACTS

At 1:40 a.m. on February 10, 1994, California Highway Patrol Officer David Hall was on patrol with his partner Officer Pedro Leon on highway 101 when they noticed an automobile traveling in the left-hand lane at 45 miles per hour. The vehicle then was driven across three lanes and onto a ramp exiting the freeway. The officers followed the vehicle. A check of its license plate revealed the automobile's registration had expired. Also, the driver, appellant, was not wearing his seat belt. The officers stopped the vehicle.

Officer Leon walked up to the right side of the car where an extremely intoxicated passenger was sitting. The interior of the car smelled of alcohol. Leon told appellant he was suspected of drunk driving and asked him for his driver's license and automobile registration. After appearing to look for his license, appellant told Leon he did not have it with him. Appellant looked dazed and did not respond when Leon next asked him for his name. When Leon asked a second time, appellant replied his name was "Lance." Leon then asked twice for appellant's last name, and appellant eventually said "James." When Leon asked appellant for his middle name, appellant said "James" and then "Bury."

Officer Leon then told appellant to get out of the car. Appellant dragged his feet on the sidewalk.

Leon instructed appellant to perform some field sobriety tests. The sidewalk was flat and illuminated by a street light. Appellant failed the first test to keep his feet close together, close his eyes, tilt his head back—he started to fall backwards, and to estimate how many seconds had passed—he said 30 seconds when 15 seconds had passed. He next failed to stand on one foot and count from 1,001 to 1,030—he lost his balance three times and could only count three numbers; on the fourth try he counted seven numbers, then put his foot down and indicated he was done. Appellant next could not walk heel to toe in a straight line for nine steps, turn around and walk another nine steps—he left spaces between his heel and toe and only walked nine steps one way.

Following appellant's failure to correctly perform these physical and verbal coordination tests, Officer Leon decided to conduct a PAS test on appellant with an "Alco-Sensor III" (Alco-Sensor) machine. After checking the machine's calibration, Leon told appellant the test was optional and if he

was arrested he would be required to take a blood, breath or urine test.[2] Appellant voluntarily blew into the machine's mouthpiece. The digital display showed a reading of .174. Leon rechecked the machine's calibration, and after several minutes obtained another breath sample from appellant. The second reading was .179.

Appellant was arrested for driving under the influence of alcohol.

Following his arrest, appellant refused, then agreed, to take a chemical test under the implied consent law. (§ 23157, subd. (a)(1).) Later at the police station, he refused to take a chemical test until his attorney was present. As a result, no further test was taken to determine appellant's BAL.[3]

At appellant's trial, the prosecution introduced undisputed expert testimony on the reliability of the Alco-Sensor machines used in Ventura County. This testimony further disclosed that a person with a concentration of anywhere from .05 to .10 percent BAL may be unable to operate an automobile safely. Impairment would be certain for most persons at .10 percent. Officer Leon testified to the numerical results of appellant's PAS test. The jury was instructed that it could consider the PAS test results in determining whether appellant's BAL was at least .08 percent. (CALJIC No. 12.61 (1990 rev.).)

## DISCUSSION

Appellant contends the results of his PAS test were inadmissible since (1) the Legislature did not intend such evidence to establish blood-alcohol content for purposes of establishing guilt; (2) PAS machines have not been accepted by the scientific community under the *Kelly/Frye* reliability test;[4] (3) the PAS evidence here was unreliable as being based on hearsay; and (4) the use of this evidence violated appellant's constitutional rights to due process and equal protection.

---

[2]Officer Leon testified at the trial: "I told [appellant] that the [PAS] test . . . was voluntary. It was optional. He didn't have to do it. I told him it was not required, and just made that clear. [¶] I then told him if he did do it for me, he would need to do it twice. In other words, blow two samples, and I would show him the results the second time. I told him it was not the implied consent test. And if he was to be arrested he would be required to take either a test of his blood, breath or urine, which does happen when someone is [suspected of] driving under the influence. [¶] And I made this clear that the breath sample that he would give me does not count as one of the implied consent tests."

[3]A refusal to take a chemical test without the presence of a suspect's attorney is deemed an absolute refusal. (§ 23157, subd. (a)(4); *Goodman* v. *Orr* (1971) 19 Cal.App.3d 845, 852-853 [97 Cal.Rptr. 226].)

[4]*People* v. *Kelly* (1976) 17 Cal.3d 24, 30 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (D.C. Cir. 1923) 293 Fed. 1013, 1014 [54 App.D.C. 46, 34 A.L.R. 145].

■ Prior to the trial, appellant moved *in limine* to exclude the PAS test evidence on the grounds of legislative intent and the *Kelly/Frye* test. He did not properly object to the evidence on the grounds of hearsay and unconstitutionality.[5] Appellant has therefore waived review on the latter grounds. ■ A judgment shall not be reversed for the erroneous admission of evidence unless the evidence was timely objected to in the trial court on the exact ground being raised on appeal. (*People* v. *Belmontes* (1988) 45 Cal.3d 744, 766-767 [248 Cal.Rptr. 126, 755 P.2d 310]; Evid. Code, § 353, subd. (a).)

*Scientific Reliability*

■ Appellant's reliance on the *Kelly/Frye* test to exclude his PAS test evidence is without merit. ■ This test requires the proponent of the application of a new scientific technique to establish (1) the technique has gained general acceptance in its field; (2) testimony regarding the technique and its application is offered by a properly qualified expert; and (3) correct scientific procedures have been used in the particular case. (*People* v. *Morris* (1991) 53 Cal.3d 152, 206 [279 Cal.Rptr. 720, 807 P.2d 949].) ■ The trial court found the technique used here was not a new scientific procedure that would trigger a *Kelly/Frye* hearing. We agree.

A PAS device is not a novel technique. (*McKinney* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 525 [7 Cal.Rptr.2d 18]; 72 Ops.Cal.Atty.Gen., *supra,* at p. 227.) Breath tests for alcohol content have been admissible by decisional law before the enactment of the implied consent law in 1966. (72 Ops.Cal.Atty.Gen., *supra,* at p. 229.) The first device used to test breath for alcohol, the "Harger Drunkometer," was developed in 1931, and the scientific reliability and accuracy of its operation were first approved in the United States in 1954. (*Id.,* at p. 227; *People* v. *Sudduth* (1966) 65 Cal.2d 543, 546, fn. 1 [55 Cal.Rptr. 393, 421 P.2d 401].) Breath tests to determine blood-alcohol concentration have long been recognized by decisional law in California as scientifically valid. (*People* v. *Adams* (1976) 59 Cal.App.3d 559, 561 [131 Cal.Rptr. 190], citing *People* v. *Sudduth, supra,* at p. 546.) Recently, the PAS test has been approved as a reliable method of measuring the presence of alcohol in a minor's blood under the zero tolerance law. (*Coniglio* v. *Department of Motor Vehicles* (1995) 39 Cal.App.4th 666, 673-677 [46 Cal.Rptr.2d 123]; § 23136.)

Appellant specifically refers to the "fuel cell" device in the Alco-Sensor machine as being a new scientific development. The trial court found that

---

[5] Appellant raised no objection of the express ground of hearsay. He made an untimely objection on constitutional grounds after the presentation of the evidence, arguing that Ventura County's alleged failure to use the Alco-Sensor's printout capacity violated his right to due process.

neither the Alco-Sensor itself nor its fuel cell was scientifically new. Appellant presented no evidence to contradict these findings.

Even if his particular theory is correct, it is unavailing. A PAS device is characterized by the purpose of its use rather than the nature of the device itself. (72 Ops.Cal.Atty.Gen., *supra*, at p. 227.) "Conceivably, any breath testing device could be used . . . if the necessary equipment and personnel to operate it are made available to the peace officer before an arrest is made." (*Ibid.*) Many types of breath-testing devices exist; by 1989, there were 56 approved PAS devices. (72 Ops.Cal.Atty.Gen., *supra*, at pp. 227-228.) Appellant's theory of requiring each new breath-testing device or mechanism to be subject to a *Kelly/Frye* analysis would lead to unnecessary and unduly burdensome litigation.

To properly contest the foundational requirements for the admission of the PAS evidence, appellant should have questioned whether the testing apparatus was in working order, whether the test was properly administered, and whether the operator was competent and qualified. (*People* v. *Sangani* (1994) 22 Cal.App.4th 1120, 1137 [28 Cal.Rptr.2d 158].) This appellant failed to do.

He also did not challenge Ventura County's compliance with state law. (Health & Saf. Code, § 436.52; Cal. Code Regs., tit. 17, § 1215 et seq.)[6] ■ In this regard, a distinction is made in California between breath-testing devices which determine the *concentration* of alcohol in the blood versus devices which simply determine the *presence* of alcohol in the blood. The title 17 regulations (Cal. Code Regs., tit. 17, §§ 1215-1222.2) have been held to be inapplicable to breath testing equipment utilized to detect the presence of alcohol in a person's blood. (*Coniglio* v. *Department of Motor Vehicles*, *supra*, 39 Cal.App.4th 666, citing § 23136, subd. (c)(1) [zero tolerance law]; 72 Ops.Cal.Atty.Gen., *supra*, at pp. 230-231.) These regulations are applicable to PAS devices used by law enforcement to preliminarily measure the concentration of alcohol in a suspect's blood prior to arrest. (72 Ops.Cal.Atty.Gen., *supra*, at pp. 226, 230-232; *Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 816 [3 Cal.Rptr.2d 478].)[7] ■ Here, the Alco-Sensor device employed by Officer Leon determined, via the machine's digital display, the numerical concentration of alcohol in appellant's blood.

---

[6]Appellant relies on *Nick* v. *Department of Motor Vehicles* (1993) 12 Cal.App.4th 1407, 1418, footnote 6 [16 Cal.Rptr.2d 305], which concludes that PAS tests designed to establish blood-alcohol levels are not performed on equipment licensed for this purpose and therefore have no foundation for admission. We disagree. The undisputed evidence here was that the Alco-Sensor machine used by Officer Leon was a fully licensed PAS device.

[7]We disagree with *Coniglio*'s suggestion that title 17 does not apply to *any* PAS device used by law enforcement. (39 Cal.App.4th at pp. 677-681.) This goes beyond the subject

Appellant's failure to object to any of these foundational requirements for establishing the reliability of the PAS evidence is a waiver of his entitlement to a review of the evidence on this ground. (Evid. Code, § 353, subd. (a).)

*Legislative Intent*

Section 23157, subdivision (h), provides: "A preliminary alcohol screening test that indicates the presence or concentration of alcohol based on a breath sample in order to establish reasonable cause to believe the person was driving a vehicle in violation of Section 23140, 23152, or 23153 may be used only after the officer evaluates the totality of the circumstances, including the person's performance on the field sobriety tests and under both of the following conditions: [¶] (1) If a person refuses to take field sobriety tests or is incapable of taking the tests, the preliminary alcohol screening test may be used as a further investigative tool, unless the person refuses to take the preliminary alcohol screening test. [¶] (2) If the officer decides to use a preliminary alcohol screening test, the officer shall advise the person that he or she is requesting that person to take a preliminary alcohol screening test to assist the officer in determining if that person is under the influence of alcohol. The person's obligation to submit to a blood, breath, or urine test, as required by this section [subdivision (a)(1)—the implied consent law], for the purpose of determining the alcohol or drug content of that person's blood, is not satisfied by the person submitting to a preliminary alcohol screening test. The officer shall advise the person of that fact and of the person's right to refuse to take the preliminary alcohol screening test."

 Here, there is no dispute that Officer Leon fulfilled section 23157, subdivision (h)(2) by advising appellant that (1) the PAS test did not satisfy the obligation to submit to chemical testing, and (2) appellant had a right to refuse to take the PAS test.

Appellant argues Officer Leon did not comply with section 23157, subdivision (h)(1), since appellant did not refuse to take the field coordination tests nor was he "incapable" of taking the tests as instructed by Officer Leon. He claims the PAS test should not have been given in the first place. Respondent argues the officer complied with subdivision (h)(1) by conducting the PAS test only after evaluating the totality of the circumstances, including appellant's performance on the coordination tests.

What exactly a police officer is required to do to employ a PAS test is not precisely defined by section 23157, subdivision (h). In fact, the statute is

---

matter of the *Coniglio* case—the mandatory statutory requirement of using PAS devices to enforce the zero tolerance law.

ambiguous and contradictory, and should be clarified by the Legislature. The introductory portion of subdivision (h) provides that a PAS test "may be used *only after* the officer evaluates the totality of the circumstances, including the person's *performance* on the field sobriety tests. . . ." (Italics added.) Yet thereafter, the statute states that, as a "condition" to using a PAS test, the driver either has refused to take field sobriety tests "or is *incapable* of taking the tests." (Subd. (h)(1), italics added.) These provisions are contradictory and illogical; an officer cannot evaluate a person's "performance" on a field coordination test if that person is "incapable of taking" such test, nor, conversely, can a person's incapacity to take a test provide an officer with any basis to assess the driver's "performance" of such test.

We believe that interpreting section 23157, subdivision (h) to authorize a PAS test only if the suspect is too intoxicated to even attempt performing a coordination test would achieve absurd results by unnecessarily limiting an officer's discretion to use a PAS test "as a further investigative tool." (Subd. (h)(1).) ■ A PAS test "is simply another form of field sobriety testing[;] . . . [it is] no more intrusive than to ask [a suspect] to walk a straight line or perform other physical and verbal coordination tests." (72 Ops.Cal.Atty.Gen., *supra*, at p. 234.) ■ We therefore hold the statute does not require, as a condition precedent to police use of PAS devices, that suspects must be incapable of performing field sobriety or coordination tests, as opposed to merely being incapable of performing coordination tests *correctly* or *successfully*. Officer Leon substantially complied with subdivision (h) by (1) conducting the PAS test "only after" evaluating the entire circumstances, including appellant's performance on the field sobriety tests (subd. (h)); (2) obtaining appellant's consent to the PAS test (subd. (h)(1), (2)), and (3) advising appellant that his submission to the PAS test did not satisfy the chemical testing requirement of the implied consent law (subd. (h)(2)).

■ We next determine whether subdivision (h) should be interpreted to exclude PAS test results on any issue other than, as it provides, "establish-[ing] reasonable cause to believe" a person was driving intoxicated. Here, the parties agree there was no issue at appellant's trial of reasonable or probable cause to arrest. Appellant contends the PAS test results were improperly admitted as proof of his guilt of drunk driving in violation of section 23157, subdivision (h). Respondent contends the statute does not purport to be an exclusionary rule, and in the absence of any federal constitutional prohibition to the use of PAS evidence, the PAS test results were admissible. (Cal. Const., art. I, § 28, subd. (d).)

Although providing that a PAS test is used to establish reasonable cause to arrest, section 23157, subdivision (h) is silent on the general admissibility of

PAS evidence. We therefore must determine the Legislature's intent regarding use of PAS evidence "as a prosecution tool." ■ When legislative intent cannot be discerned directly from the statutory language, courts may look to a variety of extrinsic aids, including the objects the statute seeks to achieve or the evils it attempts to remedy, the legislative history, public policy, and the statutory scheme of which the statute is a part. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

■ Section 23157, subdivision (h) was enacted for two purposes.

The first purpose was to require police to advise a suspected drunk driver that the PAS test does not satisfy the chemical testing requirement under the implied consent law. (Stats. 1992, ch. 1242.) This is embodied in section 23157, subdivision (h)(2). The express exemption of PAS devices from the implied consent law was necessary to correct the problem " '. . . that occurs when a DUI suspect submits to a pre-arrest Alco-Sensor test but subsequently refuses to submit to a post-arrest blood, breath or urine test as required under section 23157 of the Vehicle Code. At trial, these defendants typically argue that they satisfied the implied consent law by submitting to the Alco-Sensor test. [¶] Apparently, most judges have agreed with this argument and hence do not allow the jury to be instructed that the defendant refused to give a chemical test as required by the implied consent law. If the Alco-Sensor results are not admissible at trial, which seems to be occurring in most counties due to the lack of foundation [(see fn. 7, *ante*)], the district attorney is left to prosecute the case without an admissible chemical test and without a refusal instruction. Needless to say, a case without a post-arrest alcohol screening result or a refusal instruction is almost impossible to win.' " (Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 602 (1991-1992 Reg. Sess.) June 9, 1992, pp. 2-3; quoting a statement by the Cal. District Attorneys' Association.)

The second purpose of section 23157, subdivision (h) was to "limit the use of a [PAS] test by a peace officer, as specified . . . ." (Stats. 1992, ch. 1242.) This purpose is embodied in the language of subdivision (h)(1) that, in evaluating the totality of the circumstances to establish reasonable cause to arrest, a police officer may use a PAS test under the "condition" that "a person refuses to take field sobriety tests or is incapable of taking the tests, . . . unless the person refuses to take the [PAS] test."

The foregoing purposes establish that section 23157, subdivision (h) was enacted to aid the prosecution of driving under the influence cases and not to exclude the admissibility of PAS evidence. PAS evidence may be relevant, not only to establish cause to arrest, but as tending to prove the essential

element of the offense of drunk driving—the accused's intoxication. (72 Ops.Cal.Atty.Gen., *supra*, at p. 241; *People* v. *Daan* (1984) 161 Cal.App.3d 22, 27 [207 Cal.Rptr. 228].) Here, the jury was properly instructed according to CALJIC No. 12.61 that it could infer appellant was intoxicated if a chemical analysis of his blood, breath or urine showed a BAL of at least .08 percent.[8] The only evidence of chemical analysis taken of appellant's BAL was the results of the PAS test administered by Officer Leon. These results were relevant to establish the issue of appellant's intoxication.

■ Appellant argues the admissibility of the PAS evidence on the issue of his guilt was essentially unfair, since he was "deceived" by Officer Leon into believing that the PAS test results "would not count," when in fact the results were used to convict him. He misinterprets the purposes of section 23157, subdivision (h). The statute requires police to obtain a driver's consent to PAS testing, along with advising the driver that a PAS test is not a substitute for chemical testing under the implied consent law. If this advisement is properly given, a suspect who voluntarily submits to a PAS test cannot reasonably believe that his submission to further chemical testing is optional. Where, as here, the driver voluntarily takes a PAS test but later wrongfully refuses to take a chemical test under the implied consent law, he should not be able to profit therefrom by successfully challenging the admission of the PAS evidence. Otherwise, the legislative intent behind subdivision (h) would be subverted. (*People* v. *Young* (1987) 192 Cal.App.3d 812, 816 [237 Cal.Rptr. 703].)

Our holding that the PAS evidence was admissible on the issue of appellant's guilt is further supported by the statutory scheme of which section 23157, subdivision (h), is a part. This article generally defines substantive offenses and is not related to evidentiary rules or rules of criminal procedure.

Moreover, included within this article is section 23157.5 which provides that, because breath-testing equipment does not retain any sample of the breath, a person shall be advised before or after taking a breath test under the implied consent law that no breath sample will be retained and the person can provide in addition a blood or urine sample to be retained that may subsequently be analyzed for alcoholic content and used for criminal prosecution. (Subds. (a), (b), (c).) The statute goes on to provide that "[n]o failure

---

[8]The instruction read: "If the evidence establishes beyond a reasonable doubt that at the time of a chemical analysis of the defendant's blood, breath or urine there was 0.08 percent or more by weight of alcohol in the defendant's blood, you may but are not required to infer that the defendant was under the influence of an alcoholic beverage at the time of the alleged offense."

or omission to advise pursuant to this section shall affect the admissibility of any evidence of the alcoholic content of the blood of the person arrested." (Subd. (d).) Another statute, section 23155, subdivision (c), states regarding the presumptions affecting the burden of proof from a chemical analysis of a person's blood, breath or urine: "This section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person ingested any alcoholic beverage or was under the influence of an alcoholic beverage at the time of the alleged offense." The foregoing statutes assure the admissibility of any properly obtained evidence of blood-alcohol content. This should include PAS evidence.

Finally, a comparison of section 23157, subdivision (h), to the zero tolerance law pursuant to section 23136, indicates that, had the Legislature intended subdivision (h) to operate as a rule of evidence, it would have said so. Under section 23136, the Legislature has specifically mandated use of the PAS test to enforce the statute. (*Coniglio* v. *Department of Motor Vehicles*, *supra*, 39 Cal.App.4th at p. 677.) In contrast, subdivision (h) does not mandate the use of PAS tests for investigative uses. We think this silence weighs heavily in favor of the admissibility of PAS test evidence subject to a trial court's Evidence Code section 352 discretion.

The judgment is affirmed.

Gilbert, J., and Yegan, J., concurred.

A petition for a rehearing was denied February 6, 1996, and appellant's petition for review by the Supreme Court was denied April 11, 1996.