[No. A102208. First Dist., Div. Three. Dec. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD KEITH WILSON, Defendant and Appellant.

954

COUNSEL

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson and Gerald A. Engler, Assistant Attorneys General, Violet M. Lee, and Ayana A. Cuevas, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POLLAK, J.**—Defendant Donald Wilson appeals from his conviction of driving under the influence of alcohol causing bodily injury. Prior to his arrest, defendant consented to a preliminary alcohol screening test (PAS test) that measured the blood-alcohol level (BAL) in the breath sample he provided at 0.09 percent. After his arrest, he was required to submit to a blood test, which measured his BAL at 0.12 percent. He contends that the blood test constituted an unreasonable search and seizure and that the trial court erred by denying his motion to suppress the results of the test. We affirm.

### Factual and Procedural History

On August 16, 2000, defendant was involved in an automobile accident after his car crossed over a double yellow line and collided head-on with

another vehicle. Both the driver of the other car and her passenger suffered severe injuries as a result of the accident. Defendant was charged by information with driving under the influence causing bodily injury (Veh. Code, § 23153, subd. (a))[1]; count 1), and driving with a 0.08 percent blood-alcohol level causing injury (§ 23153, subd. (b); count 2). The information also alleged that defendant caused bodily injury to more that one victim (§ 23558), and that defendant personally inflicted great bodily injury on both victims (Pen. Code, § 12022.7, subd. (a)). Finally, the information alleged that defendant had suffered two prior strike convictions (Pen. Code, § 667, subd. (a)(1)), and two prior serious felony convictions (Pen. Code, § 667.5, subd. (b)).

Prior to trial, defendant made a motion to suppress the results of a blood test taken after his arrest. The testimony given at the suppression hearing provides the following factual history. Officer Jerry Chu arrived on the scene of the accident shortly after it occurred. Based on his initial observations that defendant's eyes were quite red, watery and bloodshot, Chu believed that defendant was intoxicated. Because of defendant's injuries, however, he was transported to the hospital before Chu could conduct a field sobriety test.

At the hospital, Chu conducted a nystagmus test whereby defendant was asked to follow Chu's finger as it was moved back and forth in front of his face. Defendant's inability to track Chu's finger indicated that he was intoxicated. Chu also requested that defendant submit to a PAS test and advised defendant that the test was voluntary and would not satisfy his obligation to submit to a subsequent BAL test if he were arrested. The PAS test showed a BAL of 0.09 percent. Based on his observations and the test results, Chu determined that defendant was under the influence of alcohol and arrested defendant.

After placing defendant under arrest, Chu advised defendant that he was required to provide a blood sample. Although defendant maintained that he was not consenting to the test, he permitted hospital staff to draw the blood sample. The blood was tested and the toxicologist determined that it contained a 0.12 percent BAL.

Based on this testimony, defendant argued that the results of the blood test should be suppressed on the ground that they were the product of an illegal warrantless search because any exigency that might have justified the administration of the blood test was eliminated by the prior administration of the PAS test. The trial court denied defendant's motion, finding that the officer acted reasonably in requiring the postarrest blood test.

---

[1] All statutory references are to the Vehicle Code unless otherwise noted.

After a three-day trial, the jury convicted defendant on both counts contained in the information and found true the great bodily injury and multiple-victim allegations. Thereafter, the trial court found true the prior conviction allegations. Defendant was sentenced to 22 years in state prison. Defendant filed a timely notice of appeal.

## Discussion

Defendant contends that his Fourth Amendment rights were violated by the taking of his blood after he voluntarily submitted to a PAS breath test. He acknowledges that prior case law and Vehicle Code section 23612, subdivisions (h) and (i), permit an officer to administer both a PAS test to help determine whether defendant is intoxicated and a postarrest blood, breath, or urine test to confirm the defendant's BAL. Nonetheless, he argues that the recent decision in *People v. Williams* (2002) 28 Cal.4th 408 [121 Cal.Rptr.2d 854, 49 P.3d 203], taken together with *People v. Fiscalini* (1991) 228 Cal.App.3d 1639 [279 Cal.Rptr. 682], eliminated any justification for the nonconsensual taking of a blood sample following the administration of a PAS test.

■ We review the trial court's denial of defendant's motion to suppress by deferring to factual findings by the trial court that are supported by substantial evidence. ■ We independently review, however, whether the search and seizure was reasonable under the United States Constitution. (*People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961]; *People v. Stanley* (1999) 72 Cal.App.4th 1547, 1551 [86 Cal.Rptr.2d 89].)

Section 23612, subdivision (a)(1)(A), provides, "A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. If a blood or breath test, or both, are unavailable, then paragraph (2) of subdivision (d) [urine test] applies." Section 23612 provides further, "(h) A preliminary alcohol screening test that indicates the presence or concentration of alcohol based on a breath sample in order to establish reasonable cause to believe the person was driving a vehicle in violation of Section 23140, 23152, or 23153 is a field sobriety test and may be used by an officer as a further investigative tool. [¶] (i) If the officer decides to use a preliminary alcohol screening test, the officer shall advise the person that he or she is requesting that person to take a preliminary alcohol screening test to assist the officer in determining if that person is under the influence of alcohol or drugs, or a combination of alcohol and drugs. The person's obligation to submit to a blood, breath, or

urine test, as required by this section, for the purpose of determining the alcohol or drug content of that person's blood, is not satisfied by the person submitting to a preliminary alcohol screening test. The officer shall advise the person of that fact and of the person's right to refuse to take the preliminary alcohol screening test." Section 23612 has been upheld against constitutional challenge on the ground that the warrantless taking of blood (or breath or urine) to prevent the destruction of evidence is reasonable under the Fourth Amendment. (*Schmerber v. California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826].)

In *People v. Bury* (1996) 41 Cal.App.4th 1194 [49 Cal.Rptr.2d 107], the court held that PAS test results are admissible to prove a defendant's guilt if the proper foundation is laid. The court also rejected the argument that a defendant who submits to a PAS test has satisfied his obligations under section 23612, subdivision (a)(1)(A). The court explained that former section 23157, subdivision (h), was enacted in part "to require police to advise a suspected drunk driver that the PAS test does not satisfy the chemical testing requirement under the implied consent law. [Citation] . . . The express exemption of PAS devices from the implied consent law was necessary to correct the problem ' "that occurs when a DUI suspect submits to a pre-arrest Alco-Sensor test but subsequently refuses to submit to a post-arrest blood, breath or urine test as required under section 23157 of the Vehicle Code. At trial, these defendants typically argue that they satisfied the implied consent law by submitting to the Alco-Sensor test. [¶] Apparently, most judges have agreed with this argument and hence do not allow the jury to be instructed that the defendant refused to give a chemical test as required by the implied consent law. If the Alco-Sensor results are not admissible at trial, which seems to be occurring in most counties due to the lack of foundation . . . the district attorney is left to prosecute the case without an admissible chemical test and without a refusal instruction. Needless to say, a case without a post-arrest alcohol screening result or a refusal instruction is almost impossible to win." ' " (*People v. Bury, supra,* at p. 1205.) The court also stated, "The statute requires police to obtain a driver's consent to PAS testing, along with advising the driver that a PAS test is not a substitute for chemical testing under the implied consent law. If this advisement is properly given, a suspect who voluntarily submits to a PAS test cannot reasonably believe that his submission to further chemical testing is optional. Where, as here, the driver voluntarily takes a PAS test but later wrongfully refuses to take a chemical test under the implied consent law, he should not be able to profit therefrom by successfully challenging the admission of the PAS evidence." (*Id.* at p. 1206.) Thus, the PAS test results are admissible to prove a defendant's guilt if the proper foundation is laid, but the test does not satisfy defendant's obligation under the section 23612 to submit to a subsequent blood, urine or breath test after being arrested for drunk driving.

Contrary to the defendant's assertion, nothing in *People v. Williams, supra*, 28 Cal.4th 408, or *People v. Fiscalini, supra*, 228 Cal.App.3d 1639, conflicts with or alters this rule of law. In *Williams*, the court reiterated, and perhaps clarified, the foundational requirements for admitting PAS test results into evidence that were applied in *Bury*. The court held that the results of a PAS test are admissible even if the tests were not performed in compliance with Department of Health Services regulations. The court held that the foundational requirements for the admission of PAS test results may be demonstrated either by showing compliance with the regulations or by showing that (1) the equipment was properly functioning, (2) the test was properly administered, and (3) the test was administered by a qualified operator. (28 Cal.4th at p. 417.) *Williams* did not address section 23612, subdivision (h) or (i).

█ In *Fiscalini*, the court held that the implied consent law permits the arresting officer to conduct only one of the alternate tests provided by the statute based upon the suspect's choice. (*Fiscalini, supra*, 228 Cal.App.3d at pp. 1644–1645.) The court reasoned that once a defendant takes a urine test, the officer may not forcibly draw blood without providing some additional justification for the warrantless search, and that having successfully completed a urine test, there is no longer an exigency to justify a second test. (*Id.* at p. 1645.) *Fiscalini* is distinguishable from the present case, however, because the PAS test and the postarrest BAL blood test are not mutually exclusive alternatives under the statute. To the contrary, section 23612 specifically provides for the use of both tests.

Defendant raises a novel question about the continued validity of section 23612, subdivisions (h) and (i), which is not answered directly by the authority cited above. Defendant suggests that since the results of his PAS test were admissible under *Williams* and *Bury*, the provisions of section 23612 which permit the arresting officer to take a subsequent BAL test are unconstitutional, because an additional test is not necessary to preserve the blood-alcohol evidence.

█ This argument is premised, however, on the assumption that the PAS test is the scientific equivalent of a postarrest blood, breath or urine test. Nothing in *Williams* compels the conclusion that the PAS test is the functional equivalent of the mandatory BAL test under section 23612, subdivision (a). *Williams* merely establishes the requirements for receiving the PAS test in evidence. The Legislature, however, has concluded that significant differences exist between the two types of tests, as demonstrated by their separate treatment in the statute. (§ 23612, subds. (h) & (i); see also Legis. Counsel's Dig., Sen. Bill No. 602 (1991–1992 Reg. Sess.), Stats. 1992, ch. 1242, pp. 3–4 [amending former section 23517 to permit use of consensual PAS test, "which indicates the presence or concentration of alcohol based

on a breath sample in order to establish reasonable cause, prior to arrest"]; *Coniglio v. Department of Motor Vehicles* (1995) 39 Cal.App.4th 666, 676 [46 Cal.Rptr.2d 123], citing Assem. Com. on Public Safety, Analysis of Sen. Bill No. 689 (1993–1994 Reg. Sess.) July 13, 1993 [legislative history of amendments to "zero tolerance law" (§ 23137) demonstrates that "Legislature considered arguments regarding the reliability of the PAS test" and "reveals a recognition of possible foundational problems associated with the PAS test"]; 59 Fed.Reg. 39382-02 (Aug. 2, 1994) [differentiating between "evidential breath testing devices," which "measure the alcohol content of deep lung breath samples with sufficient accuracy for evidential purposes," and "alcohol-screening devices," which are primarily used to detect the presence of alcohol in a person's breath or bodily fluids]; 72 Ops.Cal.Atty.Gen 226 (1989).) ▬ The Legislature may well have found that the results of the PAS breath test, normally administered by a police officer in the field, are less accurate and reliable than the chemical tests administered under more controlled circumstances and likely with more precise equipment. The immediate purpose of the implied consent law "is to obtain the *best* evidence of blood alcohol content at the time of the arrest of a person who is reasonably believed to be driving while intoxicated." (*People v. Ryan* (1981) 116 Cal.App.3d 168, 182 [171 Cal.Rptr. 854], italics added.) In the absence of any evidence to the contrary, we must accept the Legislature's implicit finding that the tests are not equivalent, and therefore that despite the taking of the PAS test, it remains important to obtain the more reliable results of the chemical test before the evidence becomes unavailable with the passage of time. (*People v. Ireland* (1995) 33 Cal.App.4th 680, 693 [39 Cal.Rptr.2d 870] [" 'where scientific opinions conflict on a particular point, the Legislature is free to adopt the opinion it chooses, and the court will not substitute its judgment for that of the Legislature' "].) "[T]he exigency created by the evanescent nature of blood alcohol and the danger that important evidence would disappear" is sufficient to satisfy Fourth Amendment standards. (*People v. Trotman* (1989) 214 Cal.App.3d 430, 436 [262 Cal.Rptr. 640].)[2]

## Disposition

The judgment is affirmed.

McGuiness, P. J., and Parrilli, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 17, 2004.

---

[2] In light of this conclusion, we do not reach the Attorney General's alternative argument that the blood test was justified here by defendant's attempt to obstruct the breath test. (See *People v. Sugarman* (2002) 96 Cal.App.4th 210, 214–216 [116 Cal.Rptr.2d 689].) Although there was evidence that Officer Chu tried on three occasions to obtain a proper breath sample, and that defendant interfered with the results by failing to seal his lips around the tube, this evidence was presented at trial and was not before the trial court when it denied defendant's motion to suppress.