Filed 9/30/13  P. v. Ferreira CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055271 |
| v. | (Super.Ct.No. RIF10003429) |
| HILARIO GARCIA FERREIRA, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Larrie R. Brainard, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and Andrew Mestman and Vincent P. LaPietra, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

Defendant and appellant, Hilario Garcia Ferreira, was charged with four counts of lewd and lascivious conduct on a child under the age of 14 years. (Pen. Code, § 288, subd. (a).) Counts 1, 2, and 3 involved Jane Doe (Jane). Count 4 involved John Doe (John). The jury found defendant guilty on each count; defendant was sentenced to concurrent terms of 15 years to life on each of the four counts.

On appeal, defendant argues the guilty verdicts on counts 1 through 3 should be reversed because the trial court erroneously admitted into evidence the video recording of Jane's Riverside Child Assessment Team (RCAT) interview. He submits that the videotape was not admissible as a prior inconsistent statement. (Evid. Code, § 1235.)[1] He further contends the videotape was so inflammatory and emotional that its admission deprived him of due process. We conclude defendant has forfeited these arguments because he did not object to the admission of the videotape on those grounds. At the trial level, counsel for defendant objected to the admission of the videotape solely on the basis of section 352. As to that ground, we hold the trial court did not abuse its discretion in admitting the videotape of the RCAT interview.

As to all counts, defendant argues the judgment must be reversed because the trial court erred by instructing the jury with CALCRIM No. 372 (Defendant's Flight), when

---

[1] All further statutory references are to the Evidence Code unless otherwise indicated.

there was no evidence of flight. While we agree that no substantial evidence supported the giving of the instruction, we find the error harmless.

## II. SUMMARY OF THE FACTS

A. *Prosecution's Case-in-chief*

### 1. Jane's Testimony

Jane was 14 years old at the time of trial. Defendant is her grandfather. She testified to five incidents in which defendant touched her. The first incident occurred when Jane was about five years old. At that time, she was living at defendant's home. Defendant grabbed her, put her on top of the washing machine, and began to touch her. Jane was wearing shorts. Defendant touched her vagina with his hand under her clothes. Jane was scared. After defendant was done touching her, he put her down and walked away. Jane could not remember how long the encounter lasted.

Jane was asked about her interview with a Child Protective Services (CPS) worker. She could not remember if she told the CPS worker about any bruises caused by defendant as a result of him grabbing her and putting her on the washing machine. She denied telling the CPS worker that defendant told her to tell her mom the bruises were caused by falling.

On cross-examination, Jane testified that during this incident defendant rubbed his hand on her vagina. However, she never told the CPS worker that defendant had "rubbed" his hand on her.

The second incident occurred a couple of years after the first incident, when Jane was seven years old. Defendant took her and John to get doughnuts. Defendant drove to the doughnut shop and asked John to get the doughnuts, leaving Jane and defendant alone in the front seat. Once John was outside the vehicle, defendant began touching Jane's vagina underneath her clothes with his hand. Defendant did not touch underneath her shirt, touch her chest, or try to kiss her. Jane did not try to get out of the car because the doors were locked. When John came back to the car, defendant stopped touching Jane and they drove back to his house. Defendant did not ask Jane not to say anything about the touching. She did not tell anyone that he tried to touch her under her shirt.

On cross-examination, Jane testified she did not tell the CPS worker that defendant touched her vagina; she told the CPS worker that defendant only touched her leg. She explained that she did not tell the CPS worker all of the details because she was scared and it was her first time talking about it. She was testifying in court to things she had never spoken of before.

The third touching incident occurred at defendant's mobilehome when Jane was seven years old. While in the kitchen, defendant grabbed her face and stuck his tongue down her throat. After some time, defendant stopped and walked away; she did not remember how long it lasted. On cross-examination, Jane indicated that she did not mention to the CPS worker anything about the type of kissing.

The fourth incident occurred when Jane was watching television in her grandmother's room. Jane and John fell asleep on the bed. Jane woke up when

4

defendant started touching her butt under her clothes. Jane got up and went to the living room to go back to sleep. She does not remember telling the CPS worker that defendant had touched her chest under her clothes or that she went back into the room to get John and move him into the living room.

After testifying that she recalled no other incidents, the prosecution provided Jane with a transcript from the RCAT interview, which refreshed Jane's memory about a fifth incident. She then testified that defendant touched her chest under her clothes while she was on the couch. After John left the living room, defendant went over to Jane and started touching her chest under her clothes while holding her neck with his other hand. He tried to kiss her, but she kept looking down until he stopped touching her. On cross-examination, she testified that defendant moved his hand across her chest.

When she was nine years old, Jane told her aunt that defendant had molested her. The matter was not reported to the police until May or June 2010, when Jane was 12 years old.

At the time of her CPS interview in July 2010, Jane was mad at defendant for trying to kill her father, O. She was also upset that her grandparents had called CPS on her parents, which resulted in her being taken away from her parents for about six months. Jane maintained she was telling the truth and not making her testimony up because of these earlier events.

5

## 2. John's Testimony

John was 12 years old at the time of trial. He testified to one touching incident with defendant. John was in his grandmother's bedroom watching television and he fell asleep. His grandmother was at the store and only defendant and John were in the house. John was on the bed, lying on his side, asleep. When John woke up, he was lying on his stomach with his pants down. He testified that defendant moved him down to the corner of the bed by pushing his legs down. Defendant proceeded to pull down John's underwear and stick his penis into John's anus. John was not awake at this time, but woke up because of some pain. At no time did John see defendant in the room. John got up, went straight to the bathroom, and locked himself inside until his grandmother arrived home. While he was in the bathroom, he noticed some "[w]hite stuff" on the side of his butt, which he wiped off.

John could not initially remember whether defendant locked the door or left it open when he came into the room. After having his memory refreshed with a transcript of his CPS interview, John testified that he was certain defendant locked the door after entering.

On cross-examination, John testified he felt a pain around his stomach area after he woke up. It first starting hurting near his butt and then went up to his stomach. John does not remember if he felt anything being stuck inside him, but something was hurting him. No one told John to come into court and make up his testimony.

6

3. Other Testimony

Riverside County Sheriff's Detective Robert Sanchez testified that he interviewed defendant. Each interview was recorded. According to Detective Sanchez, defendant described inserting his finger into John's anus. Defendant said John was lying on the bed with his feet hanging off the edge at a 90-degree angle, with his butt on the end of the bed. Defendant was behind him or lying down next to him on the bed.

During one of the interviews, defendant wrote an apology letter to Jane and John's mother asking for forgiveness. Defendant wrote: "Please forgive me . . . . [¶] . . . [¶] You know how much I have loved your children. . . . I never wanted to hurt them. . . ."

On cross-examination, Detective Sanchez indicated that defendant described two incidents with Jane and one with John. Defendant said he touched Jane twice while playing with her and only over her underwear. He said the kids were jumping all over him and he did not intentionally harm them; it was "a mistake." Defendant never told Detective Sanchez that he touched Jane in a sexual manner. He further stated that Jane and John were always together when they were with him. He denied ever putting his penis inside John's anus.

B. *Defense Evidence*

S.H., defendant's wife, testified to the following. She was separated from defendant, but the separation had nothing to do with the accusations; she believed the allegations were false. Defendant has always supported the entire family and has been like a father to Jane and John. She said John had a reputation for lying and his mother,

E., knew about it.  Defendant was never seen or known to do any sexual act toward the grandchildren.  It was her belief E. was fabricating the sexual allegations to get back at defendant for stabbing her husband O.

Other character witnesses testified they never saw defendant act inappropriately with the children.

## III.  DISCUSSION

A.  *Admissibility of Videotape of the RCAT Interview*

Prior to trial, defense counsel objected under section 352 to the playing of the videotape of Jane's RCAT interview.  As stated:  "My . . . objection would be basically a [section] 352 objection because if [the victims are] going to testify, I would question the probative value as far as playing an RCAT interview tape along with the fact of it's [*sic*] cumulative versus, as you can imagine, a high degree of prejudice for them to hear the testimony and then to see it again on tape."  He also argued:  "I do think if there was [*sic*] inconsistent statements I could see that as an exception. . . . But if it's consistent statements testified to by the two victims, I don't feel it's proper under [section] 352 to bring in the RCAT unless it's for impeachment purposes only."  "I would say if we do that with the impeachment theory, we need to narrow down and specifically relate those parts of the RCAT to the inconsistent statements.  Just my objection is to playing the RCAT as a whole under [section] 352."  The trial court overruled defendant's objection, finding it hard to believe there would not be some inconsistency in Jane's testimony.  As

8

stated by the court: "I'll overrule your objection for the moment . . . . If you wish to raise it again later with good cause, I'll certainly be happy to hear from you."

Later, at a break during Jane's testimony, the issue of playing the videotape of the RCAT interview to the jury came up again. Defense counsel, upon being asked by the court if he would like to say anything on the record, stated: "Just—no. You know my objection as to the admissibility of the tape[,] especially where it pertains to Jane Doe."

1. Defendant Has Forfeited the Claim That the Videotape of the RCAT Interview is Hearsay That Should Not Have Been Admitted as a Prior Inconsistent Statement

Defendant contends the videotape of the RCAT interview should not have been admitted into evidence because it was hearsay and did not qualify as a prior inconsistent statement.[2] Because defendant did not object to the admission of the videotape on that basis, the claim has been forfeited.

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion . . . ." (§ 353.)

"'"[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground

_____

[2] The parties agreed that section 1360, which provides an exception to the hearsay rule for statements by a victim of child abuse under the age of 12, did not apply to Jane's RCAT interview because Jane was not under the age of 12 at the time of the interview.

9

sought to be urged on appeal."' [Citations.]" (*People v. Alvarez* (1996) 14 Cal.4th 155, 186.) "A judgment shall not be reversed for the erroneous admission of evidence unless the evidence was timely objected to in the trial court on the exact ground being raised on appeal." (*People v. Bury* (1996) 41 Cal.App.4th 1194, 1201.) On appeal, a defendant "may not argue that the court should have excluded the evidence for a reason different from his trial objection." (*People v. Partida* (2005) 37 Cal.4th 428, 435.)

In this case, while counsel did question whether the videotape of the interview contained inconsistent statements, his objection was clearly premised on section 352. He expressly referred to section 352, and to no other Evidence Code section. He questioned the videotape's probative value and argued that it was cumulative and highly prejudicial in that the jury would hear the evidence twice. At no time did defense counsel specifically object on the basis of hearsay. As such, he has forfeited the argument. (*People v. Bolin* (1998) 18 Cal.4th 297, 320 [if the defendant does not object to the admission of evidence based on hearsay, he or she has forfeited that issue on appeal].)

Even if defendant made and preserved his hearsay arguments and the court erred in allowing the videotape into evidence, we would find the error harmless. While defendant objected to the playing of the videotape, he did not object to the admissibility of the written transcript of the interview, which was admitted into evidence as exhibit 3. All of the statements Jane made during the interview were, therefore, before the jury.

10

2.  The Court Did Not Abuse Its Discretion Under Section 352 in Admitting Into Evidence the Videotape of the RCAT Interview

Defendant argues that admission of the videotape violated his due process rights to a fair trial.  We again address the forfeiture issue.  In *People v. Partida, supra,* 37 Cal.4th 428, the defendant objected at trial to the admission of gang evidence on the basis of section 352.  As here, the defendant argued on appeal that the error in admitting the evidence violated his constitutional right to due process.  As stated by the court:  "In this case, defendant objected at trial that the gang evidence should be excluded under Evidence Code section 352.  The objection alerted the court to the nature of the anticipated evidence and the basis on which its exclusion was sought.  It permitted the court to make an informed ruling and gave the People the opportunity to establish the evidence's admissibility.  On appeal, defendant may argue that the court erred in its ruling.  But he may not argue that the court should have excluded the evidence for a reason different from his trial objection.  If he had believed at trial, for example, that the trial court should engage in some sort of due process analysis that was different from the Evidence Code section 352 analysis, he could have, and should have, made this clear as part of his trial objection.  He did not do so.  Accordingly, he may not argue on appeal that due process required exclusion of the evidence for reasons other than those articulated in his Evidence Code section 352 argument." (*People v. Partida, supra,* at p. 435.)  With this in mind, we address defendant's argument under section 352.

11

The trial court may exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

"We review a trial court's evidentiary rulings under [section 352] for abuse of discretion." (*People v. Doolin* (2009) 45 Cal.4th 390, 437.) "A trial court's discretionary ruling under Evidence Code section 352 will not be disturbed on appeal absent an abuse of discretion." (*People v. Lewis* (2001) 26 Cal.4th 334, 374.) An abuse of discretion is present when the court's ruling can be said to be arbitrary, capricious, or patently absurd such that it resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

"'"The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues."' [Citations.]" (*People v Escudero* (2010) 183 Cal.App.4th 302, 312.) "Evidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights." (*People v. Holford* (2012) 203 Cal.App.4th 155, 167.)

We agree with the trial court's ruling that the admission of the videotape does not offend section 352.[3] The videotape was relevant to the allegations against defendant. There is nothing in the videotape that is inflammatory or tends to evoke an emotional bias. We have viewed the videotape. It is of very poor quality. Throughout the recording, the audio is very difficult to decipher and the camera placement is either on the ceiling or at the top of an interior wall, across the room from Jane. During the interview, Jane's cell phone rang and she asked the interviewer for permission to check her phone. While she does get teary eyed to a limited extent during the interview, there is no outward demonstration of emotion. Additionally, the trial of the matter was only 14 months removed from the date of the interview; as such, the jury was not observing a significant age differential between Jane in the videotape and Jane on the witness stand.

While the videotape may have been somewhat cumulative to the testimony and the transcript of the interview, its admission was not an abuse of discretion. We therefore reject defendant's arguments on appeal.

B. *CALCRIM No. 372 and Evidence of Flight*

Defendant contends the trial court erred by instructing the jury with CALCRIM No. 372 (Defendant's Flight). He argues there was no evidence to support the giving of the instruction. While defendant did not object at trial to the instruction, we will address

_____

[3] The trial court does not appear to have viewed the videotape before making its ruling. However, as stated in *People v. Holford, supra,* 203 Cal.App.4th at page 175: "[D]efendant has not shown how the trial court's decision would have been different had it reviewed the video prior to making its ruling."

13

his argument on its merits.  We agree that no evidence supported the giving of the instruction; it is nonetheless harmless.

"[A] flight instruction is correctly given 'where there is substantial evidence of flight by the defendant . . . , from which the jury could reasonably infer a consciousness of guilt.'  [Citations.]"  (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1245.)  Because the applicability of the instruction involves the determination of legal principles, we review the matter de novo.  (See *People v. Guiuan* (1998) 18 Cal.4th 558, 569.)

As given to the jury, CALCRIM No. 372 states:  "If the defendant fled immediately after a crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled cannot prove guilt by itself."  The "instruction is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt."  (*People v. Ray* (1996) 13 Cal.4th 313, 345.)  "'"[F]light requires neither the physical act of running nor the reaching of a far-away haven.  [Citation.]  Flight manifestly does require, however, a purpose to avoid being observed or arrested."'"  (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)  "The instruction is properly given if the jury could reasonably infer that the defendant's flight reflected consciousness of guilt."  (*People v. Howard* (2008) 42 Cal.4th 1000, 1020.)  "No [flight] instruction should be given to the jury unless adapted to the evidence and circumstances of the case."  (*People v. Fremont* (1937) 22 Cal.App.2d 292, 300.)

14

At trial, the prosecutor argued that defendant engaged in wrongful conduct and then left the room so as not to get caught. On appeal, the People point to defendant's admission that he digitally penetrated John and then immediately left the room. The People contend these facts support an inference that defendant left the room in order to avoid being discovered. We disagree.

Initially, it must be noted that the conduct occurred over many years, throughout which defendant continued to have contact with the victims. As to the specific incidents, defendant would simply leave the room after touching one or the other child; he never left the house. There was no evidence that he left any of the rooms following the misconduct because he heard someone coming. Under the present circumstances, defendant leaving a room after touching the children does not give rise to a reasonable inference of consciousness of guilt; it simply denotes that defendant had finished his wrongful conduct. Further, once defendant learned of the accusations against him, he did not leave the area to avoid detection or arrest, but rather voluntarily surrendered himself to the authorities.

There are no facts suggesting that defendant, in leaving the respective rooms, was motivated by a consciousness of guilt for purposes of avoiding detection by others. (See *People v. Ray*, *supra*, 13 Cal.4th at p. 345; *People v. Bradford*, *supra*, 14 Cal.4th at p. 1055.)

While we find insufficient evidence to support a jury instruction on defendant's flight, we believe the giving of the instruction was harmless.

15

Initially, "[t]he instruction did not assume that flight was established, but instead permitted the jury to make that factual determination and to decide what weight to accord it." (*People v. Carter* (2005) 36 Cal.4th 1114, 1182-1183, fn. omitted.) In accordance with the instruction, the jury need not find flight and need not determine that it was indicative of consciousness of guilt. Moreover, the mere fact that it was given is of no consequence. The jury was specifically instructed to disregard any instruction which it found not to apply to the case. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1153.)

The defense argues the flight instruction improperly relieved the prosecution of the burden of proving beyond a reasonable doubt each element of the charged offense. In addition, defendant asserts the flight instruction created an improper permissive inference that violated due process because "'there is no rational way' jurors could make the 'connection permitted by the inference.'" As indicated above, this is simply not so. Furthermore, evidence of defendant's guilt was strong. Defendant admitted digitally penetrating John's anus, and the children's testimony and the RCAT interviews clearly demonstrated defendant's guilt. The giving of the flight instruction was simply of no consequence. Regardless of the standard used to determine harmless error, the giving of the instruction is clearly harmless. (See *People v. Moon* (2005) 37 Cal.4th 1, 28; *People v. Clem* (1980) 104 Cal.App.3d 337, 344-355 [*Watson*[4] standard is the appropriate standard for harmless error on "flight" instruction].)

---

[4] *People v. Watson* (1977) 75 Cal.App.3d 384, 403.

# IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
                                                                                      J.


We concur:

HOLLENHORST_____
              Acting P. J.

CODRINGTON_____
              J.

17