[No. B123700. Second Dist., Div. Six. June 24, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK MACE STANLEY et al., Defendants and Appellants.

1548

**COUNSEL**

Marcia A. Morrissey; and Roger Teich for Defendant and Appellant Jack Mace Stanley.

Susan Pochter Stone, under appointment by the Court of Appeal, for Defendant and Appellant David Singerman.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Victoria Bedrossian and Ruth L. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**BURKE, J.**\*—Jack Mace Stanley and David Singerman appeal from the judgment following guilty pleas to a charge of cultivating marijuana. (Health & Saf. Code, § 11358.) Probation was granted on various terms and conditions including the service of 120 and 90 days in the county jail, respectively. Appellants contend the trial court erred in denying their motions to suppress evidence.

We conclude that a search warrant was not required to install a surveillance meter to monitor consumption of electricity at Stanley's house. We also conclude that the affidavit in support of the search warrant contained sufficient legally obtained information to provide probable cause. Accordingly, we affirm the trial court's denial of appellants' motions to suppress.

FACTS

About two months before Singerman and Stanley were arrested, an informant told Deputy Sheriff Lori Erickson that Singerman said he was illegally growing marijuana inside a residence in Ventura County. The informant accurately described Singerman and identified the make, model, and license number of the truck he drove. Erickson and another deputy followed Singerman from his home in North Hollywood to a house in Ventura owned by Stanley.

Deputies watched Stanley's house for several weeks. The residence was surrounded by overgrown trees and shrubs. It did not have a lawn, swimming pool, or Jacuzzi. Erickson noted that the drapes and blinds on the front

---

\*Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

windows were always drawn. There was very little activity at the house other than Stanley and Singerman coming and going. Deputies noted that Stanley did not place a household trash receptacle at curbside for pickup for three weeks. They concluded that the house was not being used as a residence.

Without first obtaining a search warrant, deputies scanned the house with a thermal imaging device. The thermal image showed significantly more heat escaping from the roof, the roof vents and eaves of the house than from similar structures on other houses in the neighborhood.

Four days after the thermal scan, deputies consulted the electric company about the use of electricity at the house. Billing records showed normal use of power. Without a search warrant, deputies asked the electric company to install a surveillance meter on the utility pole on Stanley's property to determine if electricity was being stolen and diverted into the home. Electric company employees accessed the pole by leaning a ladder against it from a neighbor's yard.

The surveillance meter revealed that electricity was being stolen and diverted into Stanley's house. The electric company's metering records documented normal household usage of 11 kilowatts per day while the surveillance meter on the pole showed 411 kilowatts per day were being delivered.

Deputy Erickson applied for a search warrant based upon these facts and her opinion that excessive consumption of electricity was consistent with a marijuana-growing operation using 30 one-thousand-watt grow lights. The warrant was issued and executed. Growing marijuana was seized from the house.

### DISCUSSION

We review the trial court's denial of appellants' motion to suppress by deferring to factual findings by the trial court that are supported by substantial evidence. We independently review questions of law. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

In *Katz* v. *United States* (1967) 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576] the Supreme Court declared that unconstitutional searches are not limited to physical invasions or trespasses. In *Katz*, a warrantless interception of a telephone call from a glass-enclosed telephone booth was held to be an unlawful invasion of a protected privacy interest. Justice Harlan explained that the appropriate test to determine if a person's legitimate

privacy rights have been violated is twofold: first, the person must demonstrate an actual, subjective expectation of privacy in that which is searched, and second, that expectation must be one our society recognizes to be reasonable. (*Id.*, at p. 361 [88 S.Ct. at pp. 516-517] (conc. opn. of Harlan, J.).)

■ The home is a place where privacy is expected, and this expectation is one society recognizes as justifiable. (*Katz* v. *United States, supra,* 389 U.S. at p. 361 [88 S.Ct. at pp. 516-517] (conc. opn. of Harlan, J.); *United States* v. *Karo* (1984) 468 U.S. 705, 714 [104 S.Ct. 3296, 3302-3303, 82 L.Ed.2d 530].) ■ But where activities, statements, or objects are exposed to public view, the protection of the amendment does not apply. Thus, a telephone company's list of calls made from inside a home is not protected. (*Smith* v. *Maryland* (1979) 442 U.S. 735, 743-744 [99 S.Ct. 2577, 2581-2582, 61 L.Ed.2d 220].) Nor is Fourth Amendment protection extended to high resolution aerial photographs of structures in an industrial complex (*Dow Chemical Co.* v. *United States* (1986) 476 U.S. 227, 237, fn. 4, 239 [106 S.Ct. 1819, 1826, 1827, 90 L.Ed.2d 226]) or garbage set out at curbside (*California* v. *Greenwood* (1988) 486 U.S. 35, 40 [108 S.Ct. 1625, 1628-1629, 100 L.Ed.2d 30]).

■ On the other hand, searches and seizures inside a private residence without a warrant are presumptively unreasonable absent exigent circumstances. (*Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 748-749 [104 S.Ct. 2091, 2096-2097, 80 L.Ed.2d 732]; *Steagald* v. *United States* (1981) 451 U.S. 204, 211-212 [101 S.Ct. 1642, 1647-1648, 68 L.Ed.2d 38].) The rule is the same where, without a warrant, law enforcement surreptitiously employs one form or another of surveillance technology to obtain information that it could not have obtained by observation from outside the curtilage of the house. (*United States* v. *Karo, supra,* 468 U.S. at p. 715 [104 S.Ct. at p. 3303].) In *Karo*, drug enforcement officers inserted a signal locator (beeper) into a drum of ether they believed would be used to extract cocaine from drug-impregnated clothing. The movements of the can were traced to a private residence, two storage facilities, and a second residence. The court concluded that monitoring the beeper while it was inside the home was an unreasonable search because it disclosed the article was in the house and in the possession of the person whose home was being watched. (*Ibid.*; cf. *United States* v. *Knotts* (1983) 460 U.S. 276 [103 S.Ct. 1081, 75 L.Ed.2d 55] [monitoring a beeper only on its journey over public roads is not a search].)

■ Appellants argue that the utility pole was located within the curtilage of Stanley's house and that they have an expectation of privacy in all things within the curtilage. They emphasize the secluded manner in which the property was maintained. But appellants demonstrated no actual, subjective expectation of privacy in the devices used by the utility to deliver

electricity to Stanley's house. The poles, wires, transformers, and meters were owned and maintained by the utility. These devices are in plain view. There can be no expectation of privacy in the equipment used by the utility to deliver power to the house. Moreover, the electricity delivered by the utility is measured by a meter routinely monitored by its employees. The usage reflected by the meter is recorded in utility company records and billed to Stanley.

Nevertheless, appellants assert they had a reasonable expectation of privacy in the quantity of electricity delivered by the utility. They claim the surveillance meter attached to the utility pole in Stanley's backyard is constitutionally offensive because it reveals information to police about intimate activities within the house which they could not have learned without obtaining a search warrant. We disagree.

The crucial inquiry is whether the technology employed by the government reveals intimate details about objects or activities inside the home. (*Dow Chemical Co.* v. *United States, supra,* 476 U.S. at p. 238 [106 S.Ct. at pp. 1826-1827].) The technology used here did not peer inside Stanley's house or otherwise penetrate its inner sanctum. It cannot be equated to the beeper that found its way into the defendant's home (*United States* v. *Karo, supra,* 468 U.S. 705) or to the listening device that revealed what the defendant said in a closed telephone booth (*Katz* v. *United States, supra,* 389 U.S. 347).

Appellants rely upon *People* v. *Deutsch* (1996) 44 Cal.App.4th 1224 [52 Cal.Rptr.2d 366], as authority for their argument that the surveillance meter invades their Fourth Amendment privacy interests by revealing too much about their activities in the house. In *Deutsch,* police aimed a thermal imaging device at a home and detected high-heat emissions from portions of the structure. Inferences drawn from the infrared picture of the heat sources provided one of the factual bases for a search warrant. The search disclosed marijuana was being cultivated in a bedroom. The majority in *Deutsch* adopted the minority view in the United States that a warrantless thermal imaging test is an unreasonable search prohibited by the Fourth Amendment because it reveals personal, intimate, undisclosed activities within the home to which society attaches a reasonable expectation of privacy. (*Id.,* at p. 1231.) The court reasoned that " '. . . the thermal imaging scan of defendant's residence told the police something about activities within the house which they could not otherwise have learned without obtaining a warrant to search it.' " (*Id.,* at p. 1237 (conc. and dis. opn. of Anderson, P. J.).)

*Deutsch* is not persuasive here. The surveillance meter neither measures nor reveals anything about the intimate details of activities within the house.

The technology employed does not tell those monitoring it what electrical devices are inside the house or what activities the power supports. The meter does not discriminate between electricity used to fire pottery and power used to grow orchids, tomatoes or marijuana. It only tells officers how much electricity is being delivered by the utility and, by comparison to billing records, whether it is being diverted or stolen.

None of the interests which are the bases for the protection of personal privacy and intimacy associated with a home are threatened by the installation and monitoring of a surveillance meter. Appellants have not established an actual, subjective, and reasonable expectation of privacy in the poles, wires, transformers, and meters within the curtilage of Stanley's house. Neither did they have a reasonable expectation of privacy in the quantity of electricity delivered by the utility to the house. Finally, society would not accept use of the Fourth Amendment to shield the theft of electricity to support an unlawful activity within the house when there is a noninvasive method of detecting the crime.

A search warrant was not required to install and monitor the surveillance meter on the utility pole standing in Stanley's backyard. The trial court's denial of appellants' motion to suppress was correct.

Appellants maintain that even if the evidence of their heavy electrical usage was lawfully obtained, the basis for issuance of the search warrant falls short of establishing probable cause. They contend Deputy Erickson did not assert theft of electricity as a basis for her request for a warrant. They assert that the information in the affidavit is insufficient to qualify the informant as a citizen informant and argue that the tip was stale. Finally, they contend that their abnormal use of electricity does not corroborate the informant's report that Singerman said he was cultivating marijuana in a house in Ventura. We disagree.

Probable cause exists when the information on which the warrant is based is such that a reasonable person would believe that what is being sought will be found in the location to be searched. (*Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 564 [128 Cal.Rptr. 641, 547 P.2d 417].) The totality of the circumstances set out in the affidavit should be considered and must convince the magistrate that there is a fair probability that the evidence sought will be located at the scene of the search. (*Illinois* v. *Gates* (1983) 462 U.S. 213, 238-239 [103 S.Ct. 2317, 2332-2333, 76 L.Ed.2d 527].) On appeal, we accord the magistrate's determination great deference, inquiring only whether there was a substantial basis to conclude that the warrant would uncover evidence of crime. (*Id.*, at p. 236 [103 S.Ct. at p. 2331].)

The facts recited in the affidavit are sufficient to justify a conclusion by the magistrate that the informant was a citizen informant and that in the

absence of some reason to doubt the information provided, it should be considered reliable. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 268-269 [127 Cal.Rptr. 629, 545 P.2d 1333].) Erickson's affidavit recited that the informant's motivation was to aid law enforcement and to better the community. She declared that the informant was not compensated in any way for the information provided and requested anonymity for reasons of personal safety. The information provided to law enforcement was Singerman's own self-incriminating statement. His physical description and his connection to the house in Ventura were confirmed by deputies' personal observations. (See *People* v. *Terrones* (1989) 212 Cal.App.3d 139, 147-148 [260 Cal.Rptr. 355].) The information provided was accurate and reliable.

 Even if the results of the thermal scan are excised, the totality of the circumstances set out in the affidavit is sufficient to establish that there is a fair probability that the evidence sought will be located at the scene of the search. (See *People* v. *Deutsch, supra,* 44 Cal.App.4th 1224.) The affidavit submitted by Deputy Erickson recounted Singerman's admission he was growing marijuana in a house in Ventura. Erickson's surveillance of the house showed little activity there that was consistent with its use as a residence. Yet the surveillance meter showed consumption of electricity at many times the usual rate for household uses. Based upon her training and experience, Erickson concluded this information was consistent with a marijuana-growing operation.

 Although individual facts within the affidavit might also be consistent with lawful activities, it is the totality of the circumstances that must be considered. The fact that there may be more than one reasonable inference to be drawn does not defeat the issuing magistrate's finding of probable cause. Moreover, the opinions of an experienced officer may legitimately be considered by the magistrate in making the probable cause determination. (*People* v. *Tuadles* (1992) 7 Cal.App.4th 1777, 1784 [9 Cal.Rptr.2d 780].)

 There was a substantial basis to support a strong suspicion that there was evidence of a crime to be found in Stanley's house. The trial court did not err in denying the motion to quash the search warrant.

The judgments of conviction are affirmed.

Gilbert, Acting P. J., and Coffee, J., concurred.

A petition for a rehearing was denied July 20, 1999, and appellants' petition for review by the Supreme Court was denied October 20, 1999.