Filed 12/14/20  P. v. Nevins CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B301471 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA087457) |
| v. | |
| ANTHONY NEVINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas Rubinson, Judge.  Affirmed.

Pamela Tedeschi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

————————————

After his motion to quash and suppress evidence was denied, Anthony Nevins pleaded no contest to maintaining a place for the unlawful sale, giving away or use of a controlled substance. (Health & Saf. Code, § 11366.)[1] Pursuant to a negotiated agreement, Nevins was placed on formal probation for three years. On appeal Nevins contends the trial court erred in denying his motion. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Search Warrant Affidavit*

Los Angeles Police Detective Gregory McNamee applied for a search warrant to pursue an investigation into potential violations of sections 11358 (planting, harvesting or processing cannabis plants) and 11366 (maintaining a place for the unlawful sale, giving away or use of a controlled substance). In an affidavit supporting the application, McNamee stated he had received information on November 9, 2017 from a citizen who wished to remain anonymous that a possible marijuana grow was being housed in a single family residence at 23455 Justice Street in Canoga Park. The informant stated there was an overpowering odor of marijuana at and around the location and various vehicles were parked in front, and in the driveway, of the home.

Detective McNamee's statement of probable cause explained he went to the location in the early afternoon of November 14, 2017 and smelled a strong odor of marijuana emanating from the residence when he was in the driveway and again when he was across the street. McNamee observed

---

[1] Statutory references are to this code unless otherwise stated.

2

security cameras on the wall above the garage door and the walkway leading to the front door. The street-facing windows on the first floor of the two-story house were covered by blinds; the windows on the second floor were open. McNamee declared an elementary school was in "close proximity to the location," and stated fire hazard conditions associated with marijuana cultivation were of "great importance to [the] investigation." The affidavit also stated a check with the Los Angeles Department of Water and Power (LADWP) showed that electricity consumption for the residence was 15 times greater than for similar residences in the neighborhood.

Describing his experience, Detective McNamee, a Los Angeles police officer since 1999, declared he was currently assigned to the Topanga area narcotics enforcement detail, had previously worked in the Hollywood area and North Hollywood area narcotics enforcement details and had participated in numerous narcotics investigations leading to arrests for possession, possession for sale and sale of marijuana, methamphetamine, cocaine and heroin. McNamee also said he had received formal and informal training regarding the manner in which narcotics are sold.

Detective McNamee concluded, based on his training and experience and the information he had obtained, "there is a fair probability of possession of marijuana for the purposes of sales and cultivation . . . taking place at 23455 Justice Street."

Judge Melvin D. Sandvig issued a search warrant for the residence on November 15, 2017.

2. *Execution of the Warrant and Charges Against Nevins*

Executing the search warrant the same day at the Justice Street residence, Detective McNamee and several

3

Los Angeles police officers found 355 marijuana plants, more than 30 grams of cocaine and additional quantities of other controlled substances.  In addition, officers recovered 32 LED light bars, a digital scale with concentrated cannabis residue and $2,923 in cash in various denominations.

Nevins was charged in a two-count felony complaint with violating sections 11351 and 11378, both of which prohibit possession for sale of specified controlled substances.

3. *The Motion To Quash, Traverse and Suppress*

Before the preliminary hearing Nevins moved pursuant to Penal Code section 1538.5 to quash and traverse the search warrant and suppress all evidence seized at the Justice Street residence, contending Detective McNamee's affidavit failed to establish probable cause and contained material omissions and misrepresentations.[2]  Emphasizing the search in this case occurred a year after California voters had approved Proposition 64, which significantly modified California law relating to the recreational use of marijuana and expressly decriminalized limited cultivation of marijuana at a private residence, Nevins argued McNamee had no training in lawful marijuana conduct and, therefore, his observations about the significance of the smell of marijuana should have been disregarded.  In fact, Nevins contended, because marijuana use and cultivation at a private residence were now legal, the smell of marijuana was not properly considered a factor in determining probable cause to search.

---

[2]     A motion to quash challenges the facial validity of the warrant.  A motion to traverse attacks the underlying veracity of the statements made in the search warrant application.

4

The motion also pointed to other purported issues with Detective McNamee's affidavit. His statement comparing the electricity usage at the subject property and other residences, Nevins argued, lacked foundation and was based on multiple levels of hearsay. There was no information as to what records were searched or how they had been maintained; nor was there any explanation of the nexus between Nevins's apparently greater electricity use than his neighbors and a marijuana cultivation operation. In addition, although McNamee declared the residence was in close proximity to an elementary school, it was actually several houses beyond a sign that stated "End of School Zone." Nevins also argued nothing in the affidavit explained why McNamee believed there was a fire hazard, nor did it indicate McNamee had any training or expertise that would permit him to opine on that topic.

At the hearing on the motion, in addition to the points raised in his papers, Nevins argued that, to the extent the conduct described in the warrant affidavit was still unlawful, it was at most a misdemeanor. Accordingly, he asserted, it was a material misstatement for Detective McNamee to seek a search warrant for property being used to commit a felony.

Following extended oral argument, the magistrate (Judge Eric Harmon) denied the motion. The magistrate explained the question before him was not whether he agreed the affidavit established probable cause, but whether the issuing magistrate had a substantial basis for believing the warrant should issue. Applying that standard and considering all the factors together—the strong odor, the electricity usage and the security cameras—the magistrate concluded the warrant was valid. The magistrate also found there had been no

misrepresentations or intentional or reckless omission of material information by Detective McNamee.  Finally, the magistrate ruled, even if the warrant had been defective, the officers were entitled to rely on it under the good faith exception of *United States v. Leon* (1984) 468 U.S. 897 (*Leon*).

Following a preliminary hearing before Judge Harmon, Nevins was charged by information with the same two felony counts as set forth in the earlier complaint.  Nevins then renewed his motion to suppress all evidence in the trial court, relying on the grounds asserted before the preliminary hearing magistrate.

The court (Judge Thomas Rubinson) denied the motion. The court explained, notwithstanding Proposition 64, cannabis remains an enumerated controlled substance under Health and Safety Code section 11054, subdivision (d)(13); violation of Health and Safe Code section 11366, maintaining a place for the unlawful sale, giving away or use of a controlled substance, including those identified in section 11054, subdivision (d)(13), is a wobbler offense; and Penal Code section 1524, subdivision (a)(3), authorizes issuance of a search warrant when property is in the possession of a person with the intent to use it in the commission of a "public offense," which, under Penal Code section 16, includes not only felonies but also misdemeanors and infractions.  The court further ruled that hearsay (the information concerning electricity usage) can support a search warrant and, based on the strong smell from across the street and the electricity use, the issuing magistrate had a substantial basis for authorizing the search warrant.  As had the preliminary hearing magistrate, the trial court also ruled, even if for some reason a warrant should not have issued, the *Leon* good faith

6

exception would apply; and the motion to suppress was properly denied.

4. *Nevins's Plea and Sentence*

Following denial of Nevins's motion to suppress, the information was amended to add a violation of section 11366 as count 3. Nevins entered a plea of no contest to that charge. Pursuant to a negotiated agreement the court suspended imposition of sentence and placed Nevins on three years formal probation with conditions including performance of 34 days of community service. Counts 1 and 2 were dismissed.

## DISCUSSION

1. *Governing Law and Standard of Review*

a. *The motion to quash*

"The pertinent rules governing a Fourth Amendment challenge to the validity of a search warrant, and the search conducted pursuant to it, are well settled. 'The question facing a reviewing court asked to determine whether probable cause supported the issuance of the warrant is whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing.' [Citations.] 'The test for probable cause is not reducible to "precise definition or quantification."' [Citation.] But . . . it is '"less than a preponderance of the evidence or even a prima facie case."' [Citation.] '"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."' [Citations.] 'The magistrate's determination of probable cause is

7

entitled to deferential review.' [Citations.] . . . [T]he warrant 'can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence' supporting the finding of probable cause." (*People v. Westerfield* (2019) 6 Cal.5th 632, 659-660; accord, *People v. Miles* (2020) 9 Cal.5th 513, 576; *People v. Kraft* (2000) 23 Cal.4th 978, 1040-1041; see *Illinois v. Gates* (1983) 462 U.S. 213, 238-239.)

  b. *The motion to traverse*

 "'A defendant has a limited right to challenge the veracity of statements contained in an affidavit of probable cause made in support of the issuance of a search warrant. . . . Innocent or negligent misrepresentations will not support a motion to traverse. [Citations.] A defendant who challenges a search warrant based on *omissions* in the affidavit bears the burden of showing an intentional or reckless omission of material information that, when added to the affidavit, renders it insufficient to support a finding of probable cause. In either setting, the defendant must make his showing by a preponderance of the evidence, and the affidavit is presumed valid.'" (*People v. Miles*, *supra*, 9 Cal.5th at pp. 576-577; accord, *People v. Scott* (2011) 52 Cal.4th 452, 484.)

  c. *The* Leon *good faith exception*

 In *Leon*, *supra*, 468 U.S. 897 the United States Supreme Court, considering a case in which an officer had relied on a search warrant that was later found to be deficient, held the exclusionary rule should not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even if the warrant was subsequently invalidated. (*Id.* at p. 920.) The *Leon* Court reasoned that, "[i]n the ordinary case, an officer cannot be

8

expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' [Citation.] Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (*Id.* at p. 921.) The doctrine, the Supreme Court noted, is objective and fact-based: "[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered." (*Id.* at p. 922, fn. 23.)

As the California Supreme Court explained in *People v. Macabeo* (2016) 1 Cal.5th 1206, 1222, notwithstanding United States Supreme Court's recognition of the good faith exception in *Leon*, the *Leon* Court also cautioned, "[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, [citation], and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.' [Citation.] *Leon* noted that an officer could not reasonably rely on a warrant based on an affidavit "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" or if the warrant was 'so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.'"

9

2. *The Search Warrant Was Supported by Probable Cause*
   a. *The impact of Proposition 64*

Nevins's challenge to the validity of the search warrant and Detective McNamee's showing of probable cause centers on the changes in California law effected in November 2016 by voter approval of Proposition 64, the Control, Regulate and Tax Adult Use of Marijuana Act and the impact of those changes on the factors properly considered when determining whether probable cause supports issuance of a search warrant. Prior to passage of Proposition 64 medical use of marijuana was legal under California law, but nonmedical use was illegal. The stated purpose of Proposition 64 was "to establish a comprehensive system to legalize, control and regulate the cultivation, processing, manufacture, distribution, testing, and sale of nonmedical marijuana, including marijuana products, for use by adults 21 years and older, and to tax the commercial growth and retail sale of marijuana." (See Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 64, § 3, p. 179.) The intent of the Act included "[p]ermit[ting] adults 21 years and older to use, possess, purchase and grow nonmedical marijuana within defined limits for use by adults 21 years and older as set forth in [the Act]." (*Id.*, text of Prop. 64, § 3, subd. (*l*), p. 179.)

Cannabis remains identified as a Schedule I controlled substance. (§ 11054, subd. (d)(13).) However, Proposition 64 added section 11362.1 to the Health and Safety Code generally allowing possession, smoking and ingestion of small amounts of marijuana, as well as limited cultivation of marijuana plants. Section 11362.1, subdivision (a), states: "Subject to Sections 11362.2 [imposing restriction on personal cultivation of cannabis], 11362.3 [limiting locations where use of cannabis is

10

permitted, including school grounds], 11362.4 [establishing penalties for violating section 11362.3], and 11362.45 [identifying laws not affected by Proposition 64], but notwithstanding any other provision of law, it shall be lawful under state and local law, and shall not be a violation of state or local law, for persons 21 years of age or older to:  [¶] (1) Possess, process, transport, purchase, obtain, or give away to persons 21 years of age or older without any compensation whatsoever, not more than 28.5 grams of cannabis not in the form of concentrated cannabis; [¶] (2) Possess . . . not more than eight grams of cannabis in the form of concentrated cannabis, including as contained in cannabis products; [¶] (3) Possess, plant, cultivate, harvest, dry, or process not more than six living cannabis plants and possess the cannabis produced by the plants; [¶] (4) Smoke or ingest cannabis or cannabis products; and [¶] (5) Possess, transport, purchase, obtain, use, manufacture, or give away cannabis accessories to persons 21 years of age or older without any compensation whatsoever."[3]

Section 11362.1, subdivision (c), declares that cannabis and cannabis products involved in conduct made lawful by section 11362.1, subdivision (a), are not "contraband," and further provides, "no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest."  Under section 11358, subdivision (c), a person 18 years old or older who cultivates more than six living cannabis plants is guilty of a

---

[3]    Effective June 27, 2017 Senate Bill No. 94 (2017-2018 Reg. Sess.) changed "marijuana" to "cannabis" throughout section 11362.1.  (See Stats. 2017, ch. 27, § 129.)

misdemeanor.[4]  Similarly, possession for sale of marijuana by an adult is a misdemeanor except in certain circumstances not involved in this case.  (§ 11359, subds. (b) & (c).)

b.  *Reliance on the strong odor of marijuana*

Nevins does not dispute that both the unidentified informant and Detective McNamee were able to detect the strong odor of marijuana emanating from the Justice Street residence when standing across the street from the house or that the smell supported an inference of the presence of marijuana.  (See *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1240 [distinctive odor can provide probable cause to support issuance of a search warrant]; *People v. Cook* (1975) 13 Cal.3d 663, 668 [strong odor of fresh marijuana supports probable cause that marijuana is present], disapproved in part on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  Rather, his argument is that it was not possible for McNamee, who lacked specific training in cannabis cultivation, to assess whether the smell was created by more than six plants and, therefore, whether the conduct at the residence was unlawful.  And even if he could determine there were more than six plants being grown at the residence, Nevins continues, that merely gives rise to criminal liability for a misdemeanor, not a felony, as McNamee asserted he was investigating.

---

[4]      The penalty prescribed by section 11358, subdivision (c), is six months in county jail, a fine of $500 or both.  Cultivation of more than six living plants may be punished as a felony when done by a person with certain prior convictions or intentionally or with gross negligence in a manner that causes substantial environmental harm.  (§ 11358, subd. (d).)

12

Nevins's argument fundamentally misapprehends the nature of the showing required for issuance of a search warrant. Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates, supra*, 462 U.S. at p. 238.) "'"[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment."'" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 592.) Accordingly, Detective McNamee did not need to know Nevins was growing more than six plants; he only needed to believe, based on the information he had, it was fairly probable cultivation at the residence exceeded the limits permitted by Proposition 64. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 369-370 ["'Probable cause sufficient for issuance of a warrant requires a showing that makes it "'substantially probable that there is specific property lawfully subject to seizure presently located in the particular place for which the warrant is sought.'" . . . 'The showing required in order to establish probable cause is less than a preponderance of the evidence or even a prima facie case'"].) Moreover, as discussed, the question presented in reviewing the order denying the motion to quash is one more step removed— that is, whether the magistrate had a substantial basis for concluding a fair probability existed that the search would uncover wrongdoing. (*People v. Miles, supra*, 9 Cal.5th at p. 576; *People v. Westerfield, supra*, 6 Cal.5th at pp. 659-660.) McNamee's background in drug enforcement and his declaration concerning the overwhelming strong odor, coupled with the unusually high electricity usage reported by the LADWP,

provided ample grounds for the magistrate's decision to issue the warrant.[5]

*People v. Pellegrin* (1977) 78 Cal.App.3d 913, discussed at some length by Nevins, does not suggest a different result. In *Pellegrin* a San Diego police officer stated in his affidavit that he had observed one three-foot marijuana plant growing next to a fence at the rear of the defendant's home. The officer opined the plant did not appear to be growing wild and explained he knew individuals who cultivated marijuana and kept material related to unlawful cultivation hidden in their residence and garages. (*Id.* at p. 915.) Based solely on that information, a warrant was issued to search the defendant's home. (*Id.* at p. 916.) The court of appeal reversed the ensuing conviction for possession of concentrated marijuana, holding the affidavit on which the search warrant was based was insufficient because the magistrate was not presented with facts indicating marijuana was being cultivated in the backyard. "Without a showing the marijuana was not growing wild there are no facts from which it can be inferred contraband was in [defendant's] home. [The officer's] conclusory statement: 'Such plant did not appear to be growing wild' was of no assistance to the magistrate." (*Id.* at p. 917.) Here, in contrast, Detective McNamee presented the facts upon which he based his inference that large-scale cultivation of cannabis plants was occurring at

---

[5] Although the presence of security cameras and closed blinds on the street-facing windows, standing alone, do not suggest anything other than a concern for safety and privacy, these additional facts certainly reinforced the fair probability that unlawful activity was occurring at the Justice Street residence.

14

23455 Justice Street—the strong odor of marijuana not only in the driveway but also from across the street, reported by the informant and confirmed by McNamee, as well as the abnormal electricity usage—and the issuing magistrate, unlike the magistrate in *Pellegrin*, was able to make his own determination that a fair probability of criminal behavior existed. While McNamee also offered his opinion, that is not only proper but also useful in assessing the existence of probable cause. (See, e.g., *People v. Stanley* (1999) 72 Cal.App.4th 1547, 1555 ["the opinions of an experienced officer may legitimately be considered by the magistrate in making the probable cause determination"].)

Nevins's further objection that, even if unlawful, under Health and Safety Code section 11358 growing more than six marijuana plants is only a misdemeanor, is doubly flawed. First, as the trial court explained when denying Nevins's renewed motion to suppress, pursuant to Penal Code section 1524, subdivision (a)(3), a search warrant may be issued for property that is intended for use in a misdemeanor, or even an infraction, not simply for property used as the means of committing a felony. To the extent Detective McNamee's affidavit misstated the nature of the offenses being investigated, Nevins failed to show that misstatement was in any way material to the magistrate's decision to issue the warrant.

Second, although section 11358 was one of the bases for the search warrant identified by Detective McNamee, he also asserted there was a fair probability of cultivation of marijuana at the Justice Street house in violation of section 11366. That section, which ultimately was the basis for the felony charge to which Nevins pleaded, provides, "Every person who opens or maintains any place for the purpose of unlawfully selling, giving

15

away, or using any controlled substance which is . . . specified in paragraph (13), (14), (15), or (20) of subdivision (d) of Section 11054 . . . shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison." As discussed, cannabis remains a controlled substance. Section 11366 does not criminalize growing more than six cannabis plants—the misdemeanor offense described in section 11358—but continues to define as a wobbler offense providing the location for the cultivation of marijuana with the intent the product thereafter will be sold or otherwise used in an unlawful manner. Although Nevins argued in both his original and renewed motions that section 11366 as applied to cannabis did not survive Proposition 64, there is no case law supporting that position. McNamee was expected only to have a reasonable knowledge of what the law prohibits, not to anticipate future— and, at least at this point, somewhat questionable—developments in the law. (See *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 239 [trial court properly denied motion to suppress based on vehicle search conducted in compliance with *New York v. Belton* (1981) 453 U.S. 454 prior to decision in *Arizona v. Gant* (2009) 556 U.S. 332]; *People v. Macabeo, supra*, 1 Cal.5th at p. 1225.)

      c. *Reliance on the elevated consumption of electricity*

Consumption of electricity at many times the usual rate for household uses is consistent with a marijuana-growing operation. (*People v. Stanley, supra*, 72 Cal.App.4th at p. 1555.) Nevins provides several reasons why Detective McNamee's statement summarizing LADWP's report on the elevated consumption of electricity at the Justice Street residence would be inadmissible at trial. (See, e.g., Evid. Code, §§ 702, subd. (a) [testimony of a witness is inadmissible unless witness has personal knowledge of

16

the matter], 1200, subd. (b) [absent a recognized exception, hearsay is not admissible].) But admissibility is not the test; and it was entirely proper for the issuing magistrate to consider the far greater use of electricity at the Justice Street residence, together with the strong odor of marijuana, in determining probable cause for the search had been established.

"[A]n affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.'" (*Illinois v. Gates, supra*, 462 U.S. at pp. 241-242; accord, *People v. Hale* (1968) 262 Cal.App.2d 780, 789 [hearsay is admissible to establish probable cause to search]; *People v. Cooper* (1967) 249 Cal.App.2d 479, 481 [hearsay evidence is admissible to show probable cause for arrest and search]; see *Humphrey v. Appellate Division* (2002) 29 Cal.4th 569, 573 ["[p]robable cause, unlike the fact itself, may be shown by evidence that would not be competent at trial"].)

Although Nevins correctly observes the affidavit did not identify what records LADWP had searched to come to its conclusion the residence at 23455 Justice Street used 15 times as much electric power as similar residences in the neighborhood, how those records were compiled, the dates of usage that were compared or how it was determined which neighboring residences were similar, the absence of those details does not in any way indicate the information was unreliable. Nothing in the affidavit suggested Detective McNamee did not actually obtain usage information from LADWP or that he had misrepresented the data provided. Indeed, other than complaining about the lack of detail, Nevins did not argue in his original or renewed motion and does not suggest on appeal in what way the 15-times-as-much comparison was inaccurate. As discussed, to traverse the

warrant, it was Nevins's burden to demonstrate McNamee's omission of information not only was intentional or reckless but also that, if added, the information would have rendered the affidavit insufficient to support a finding of probable cause. (*People v. Miles*, *supra*, 9 Cal.5th at pp. 576-577; *People v. Scott*, *supra*, 52 Cal.4th at p. 484.) Nevins failed to carry that burden; and, as we must, absent the requisite showing we presume the affidavit was valid.

3. *The Officers Reasonably Relied on the Warrant in Good Faith*

Both the preliminary hearing magistrate and the trial court found Detective McNamee and his fellow officers reasonably relied in good faith on the warrant and, even if the warrant were invalid, under *Leon*, *supra*, 468 U.S. 897 Nevins's motion to suppress evidence was properly denied. As Nevins explains, the Supreme Court in *Leon* held the good faith exception does not apply "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; if "the issuing magistrate wholly abandoned his judicial role"; if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or if the warrant was facially deficient, for example in failing to particularize the place to be searched or the things to be seized, so that "'the executing officers cannot reasonably presume it to be valid.'" (*Id.* at p. 923.) None of those grounds exists in this case.

As discussed, contrary to Nevins's contention, to the extent the suspected unlawful conduct at the Justice Street residence was more properly characterized as a misdemeanor rather a

18

felony, there is nothing in the record to suggest Detective McNamee made the misstatement intentionally or recklessly or that the issuing magistrate was in any way misled by the possible error. Similarly, Nevins's suggestion that the issuing magistrate abandoned his judicial role is simply a repackaging of his argument the magistrate erred in concluding probable cause existed to search the residence. There was no showing the magistrate did anything other than properly perform his assigned tasks in reviewing the affidavit and ensuring that the warrant properly identified the location to be searched and the items that could be seized. Finally, for the reasons discussed, we believe the affidavit sufficiently established probable cause. But if it did not, the affidavit was not so deficient that it was "entirely unreasonable" for the officers who executed the warrant to believe it was valid.

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.                    RICHARDSON, J.*

---

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.