Filed 3/27/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GREGORY KAZELKA,<br><br>        Plaintiff and Respondent,<br>v.<br><br>CALIFORNIA DEPARTMENT OF MOTOR VEHICLES,<br><br>        Defendant and Appellant. | A163664<br><br>(Lake County Super. Ct. No. CV-421437) |

Following an administrative hearing, a California Department of Motor Vehicles (DMV) hearing officer concluded respondent Gregory Kazelka had been driving under the influence and temporarily suspended his license. The trial court subsequently granted Kazelka's petition for writ of mandamus and reversed the order of suspension, finding that the hearing officer improperly admitted and relied upon a pre-arrest breath test. The DMV now challenges the trial court's exclusion of the breath test as contrary to California law. We agree and reverse.[1]

---

[1] On May 2, 2024, the DMV filed an unopposed request for judicial notice of various legislative records regarding Senate Bill No. 602. We grant the request. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).) In addition, we take judicial notice of the entire legislative history of Senate Bill No. 602 on our own motion. (See *PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1204, fn. 25.)

# BACKGROUND

*Factual Background*

A member of the public observed Kazelka swerving and driving extremely slowly and reported him to law enforcement. That individual provided Kazelka's license plate number and a description of his vehicle to the police.

California Highway Patrol Officer Phillips responded to the complaint, observed similar driving patterns, and conducted a traffic stop. When Officer Phillips informed Kazelka that an individual observed his driving and was concerned he was intoxicated, Kazelka acknowledged he had been drinking "too much" and was "drunk."

Officer Phillips had Kazelka exit his vehicle and asked Kazelka if he was willing to take field sobriety tests. Officer Phillips stated, "It's completely up to you as to how many of them you do . . . . I want to give you the best opportunity to show that you're under the limit." Kazelka responded, "Whatever you want to do . . . . Sure, why not." During the tests, Kazelka struggled to follow direction, lost his balance, and did not properly count.

Officer Phillips then informed Kazelka "we're going to do" a preliminary alcohol screening (PAS) test, and "California requires that I give the admonition for it." However, the officer did not provide the admonition or otherwise inform Kazelka the PAS test was voluntary. Instead, Officer Phillips proceeded to explain the purpose of the PAS test and stated, "We're going to do two of these no matter what. If I do place you under arrest for DUI, there's a similar test you have to blow into. But this is not that one."

The PAS tests showed results of 0.11% and 0.10% blood alcohol content, above the 0.08% legal limit. Officer Phillips subsequently placed Kazelka under arrest.

Following his arrest, Kazelka provided a chemical breath sample, which indicated 0.11% blood alcohol content. When Officer Phillips attempted to obtain a second sample, the chemical breath test device malfunctioned. As a result, Officer Phillips did not obtain a second chemical breath sample from Kazelka.

Officer Phillips subsequently prepared a sworn statement regarding the traffic stop and arrest. That report set forth the PAS test and the single chemical breath test results. The officer also stated he administered the PAS test in accordance with the manufacturer's guidelines, he had received training on the proper use of the device and was competent to use the device, and the PAS test functioned properly. The page regarding admonitions was left blank. In a subsequent investigative report, prepared approximately a week later, Officer Phillips checked a box indicated the "arresting officer" had provided the statutory admonition for the PAS test.

*Administrative Per Se (APS) Hearing*

The DMV notified Kazelka of its intent to suspend his driving privileges, and Kazelka requested a hearing to challenge the suspension.

In advance of the hearing, the DMV served six subpoenas to the calibration officer regarding the PAS device, two of which were served by the hearing officer.

Shortly after the conclusion of the administrative hearing, Kazelka submitted a letter to the hearing officer, objecting to the admission of Kazelka's PAS test results. The letter argued the PAS test was inadmissible

because Officer Phillips failed to provide the statutory admonishment informing Kazelka the test was voluntary.

The hearing officer found the PAS test results satisfied the foundational requirements for admission. Specifically, the hearing officer concluded (1) the "the totality of the evidence shows that the PAS test meets [*Adam*s][2] and *Coniglio*[3] foundation," (2) the officer in charge of calibrating the PAS test device had properly maintained the device, and (3) Officer Phillips was qualified and trained on the proper operation of the device. The decision did not directly address Kazelka's admonition objection. The hearing officer ordered Kazelka's driving privileges suspended for four months.

*Kazelka's Writ Petition to the Superior Court*

Kazelka filed a petition for writ of mandamus challenging the DMV's order of suspension.

In considering the petition, the court first noted a preponderance of the evidence indicated Kazelka drove with a blood alcohol content above the legal limit. However, the court concluded the PAS test results should have been excluded "as the proper remedy" for Officer Phillips's failure to provide the statutory admonishment in violation of Vehicle Code section 23612, subdivision (i). The court believed application of the exclusionary rule was appropriate because the statute contained "mandatory language without reservation or factual exception." The court found this language demonstrated that the Legislature intended the admonition to be an integral part of the statutory scheme because a driver had a "statutory right" to refuse

---

[2] *People v. Adams* (1976) 59 Cal.App.3d 559, 561 (*Adams*).

[3] *Coniglio v. Dept. of Motor Vehicles* (1995) 39 Cal.App.4th 666 (*Coniglio*).

a PAS test.  The court analogized the failure to give the PAS test admonishment to law enforcement's failure to provide a *Miranda*[4] warning.

The trial court granted the petition, and the DMV timely appealed.

## DISCUSSION

On appeal, the DMV argues the trial court improperly found Officer Phillips's failure to inform Kazelka that the PAS testing was voluntary (1) was a foundational element to the test's admissibility, and (2) required the test's exclusion.  In response, Kazelka asserts the trial court properly excluded evidence of the PAS test results.[5]  He also contends, for the first time on appeal, that the APS hearing violated his due process rights.

When ruling on a petition for a writ of mandate challenging an order suspending a driver's license, a trial court generally exercises its independent judgment to determine " ' "whether the weight of the evidence supported the administrative decision." ' "  (*Lake v. Reed* (1997) 16 Cal.4th 448, 456 (*Lake*).)  On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence.  (*Id.* at p. 457.)  To the extent

---

[4] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[5] Kazelka also appears to argue the evidence did not support a finding that his blood alcohol content was .08 or higher, including that Officer Phillips's written statement was "rebutted."  However, the issue before this court is whether the trial court properly excluded the PAS test result, not whether sufficient evidence supported the hearing officer's ruling.  Moreover, Kazelka's argument that the officer's report must contain "nearly all of the information" needed to remove an offender's license ignores the fact that Government Code section 11513, subdivision (c), allows a hearing officer to admit and consider " '[a]ny relevant evidence . . . if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.' "  (See *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 159 ["[S]o long as a sworn report is filed, it is consistent with the relaxed evidentiary standards of an administrative per se hearing that technical omissions of proof can be corrected . . . ."].)

the issues presented require us to interpret one or more statutes, we apply a de novo standard of review and are not bound by the trial court's interpretation. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

## I. Admissibility of PAS Tests

Government Code section 11513 addresses the admissibility of evidence in administrative hearings. (*Lake, supra,* 16 Cal.4th at p. 458.) That section provides in relevant part: "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c).)

### A. The PAS Test Met the General Standard for Admissibility

Courts have found PAS breath test results to be admissible under Government Code section 11513 if they either comply with the regulations set forth in California Code of Regulations, title 17 (Title 17)[6] or satisfy three foundational elements set forth in *Adams, supra,* 59 Cal.App.3d at page 561: (1) properly functioning equipment, (2) a properly administered test, and (3) a qualified operator. (*Molenda v. Dept. of Motor Vehicles* (2009) 172 Cal.App.4th 974, 1000; accord, *People v. Williams* (2002) 28 Cal.4th 408, 417–418 (*Williams*) [PAS testing did not meet Title 17 foundational requirements

---

[6] Title 17 contains various regulations relating to the analysis of blood, breath, or urine samples to determine the alcohol content of the samples. (See Cal. Code Regs., tit. 17, §§ 1215–1222.2.)

but was reliable and admissible under the *Adams* foundational requirements].)

Here, the DMV offered evidence of the *Adams* foundational criteria to support the admission of the PAS test. As noted by the hearing officer, the PAS test satisfied the *Adams* foundational requirements as demonstrated by the calibration officer's testimony that the PAS device was properly maintained, and Officer Phillips's sworn statement that he is qualified and trained on the proper operation of the PAS device.

Kazelka does not dispute these findings. Instead, he contends Officer Phillips's written statement—and thus the PAS test—is "rebutted" based on Officer Phillips's misrepresentation regarding whether he had provided the PAS test admonition. But Kazelka does not explain why that misrepresentation has any bearing on Officer Phillips's statement that he is qualified and trained to use the PAS device. And nothing in the record suggests any improper device usage. Accordingly, substantial evidence supports the general admissibility of the PAS test results under *Adams*.

## B. The Statutory Admonishment Is Not a Foundational Requirement For Admissibility

Despite the hearing officer's determination that the PAS test met the foundational criteria of *Adams* for admissibility, the trial court reasoned the PAS test at issue should have been excluded. The court concluded Vehicle Code section 23612 imposes a mandatory admonition that is a "foundational element of admission of the PAS tests." We disagree.

Vehicle Code section 23612, subdivision (i) (section 23612(i)), provides: "If the officer decides to use a preliminary alcohol screening test, the officer shall advise the person that he or she is requesting that person to take a preliminary alcohol screening test to assist the officer in determining if that

person is under the influence of alcohol or drugs . . . . The person's obligation to submit to a blood, breath, or urine test, as required by this section, for the purpose of determining the alcohol or drug content of that person's blood, is not satisfied by the person submitting to a preliminary alcohol screening test. The officer shall advise the person of that fact and of the person's right to refuse to take the preliminary alcohol screening test." (Veh. Code, § 23612, subd. (i).)

" ' "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.] "We first examine the statutory language, giving it a plain and commonsense meaning." [Citation.] "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " (*Chavez v. California Collision, LLC* (2024) 107 Cal.App.5th 298, 306.)

Here, section 23612(i) requires a police officer to inform drivers that the PAS test is voluntary; however, it is silent as to the consequence of an officer's failure to do so. We decline to interpret such silence as a mandate to exclude PAS testing evidence. (Accord, Code Civ. Proc., § 1858 ["the office of the Judge is simply to ascertain and declare what is in terms or in substance contained [in a statute], not to insert what has been omitted, or to omit what has been inserted."].) Without explicit statutory guidance as to the impact of an officer's failure to advise the PAS testing is voluntary, we turn to the legislative history for guidance as to the provision's purpose.

As explained by our colleagues in the Second District, the legislative history demonstrates section 23612(i), "was enacted to aid the prosecution of

driving under the influence cases and not to exclude the admissibility of PAS evidence." (*People v. Bury* (1996) 41 Cal.App.4th 1194, 1205–1206 [discussing Vehicle Code section 23157, subdivision (h), the predecessor to section 23612(i)].)  Specifically, this statutory language was initially proposed to address a specific problem in drunk driving prosecutions—drivers would submit to a pre-arrest breath test but would subsequently refuse to submit to a post-arrest blood, breath or urine test.  (*Id.* at p. 1205.)  As explained by an Assembly report, drunk driving defendants " 'typically argue that they satisfied the implied consent law by submitting to the Alco–Sensor test.  [¶] Apparently, most judges have agreed with this argument and hence do not allow the jury to be instructed that the defendant refused to give a chemical test as required by the implied consent law.  If the Alco–Sensor results are not admissible at trial, which seems to be occurring in most counties due to the lack of foundation . . . , the district attorney is left to prosecute the case without an admissible chemical test and without a refusal instruction. Needless to say, a case without a post-arrest alcohol screening result or a refusal instruction is almost impossible to win.' "  (Assem. Com. on Pub. Safety, analysis of Sen. Bill No. 602 (1991–1992 Reg. Sess.) Jun. 9, 1992, pp. 2–3; quoting a statement by the Cal. Dist. Attys' Assn.)

The legislative history thus clarifies that the purpose of the statutory language at issue is not to govern the admissibility of PAS tests, but rather to ensure that drivers are not exempted from their obligation to take a mandatory post-arrest chemical test.  (See, e.g., Assem. Ways & Means Com., analysis of Sen. Bill No. 602 (1991–1992 Reg. Sess.) Aug. 5, 1992, p. 1 ["this bill would . . . [c]larify the use of a preliminary alcohol screening test on a motorist, and require peace officers to advise persons who submit to the test that it does not satisfy the legal obligation for chemical testing."].)  In other

words, the statute's purpose is to inform drivers that the PAS test is *not* the mandatory chemical test, and participation in the PAS testing does not excuse subsequent chemical testing.

The legislative history also suggests the possible consequence of an officer's failure to provide the statutory admonition: drivers who take the PAS test without being admonished could assert the PAS test did, in fact, satisfy their mandatory chemical test requirement and refuse further testing—i.e., a return to the situation that existed prior to enactment of Senate Bill No. 602.  (See Legis. Counsel's Bill Stmt., Sen. Bill No. 602 (1991–1992 Reg. Sess.) Jun. 9, 1992, pp. 1–2 [Senate Bill 602 "[w]ould clarify existing law by amending the implied consent law to require a custodial blood, breath or urine test following a preliminary alcohol screening test, *so long as the driver is informed of his right to refuse such preliminary tests*."] (italics added).)

In sum, the legislative history demonstrates the statutory admonition was designed to contrast the pre-arrest PAS testing from mandated post-arrest testing, and thus prevent drunk drivers from avoiding post-arrest chemical testing by participating in the PAS testing.  Nothing suggests the statutory admonition impacts the admissibility of the PAS testing, and the trial court erred in concluding otherwise.

### C. *The Exclusionary Rule Does Not Apply to APS Hearings*

" ' "The Fourth Amendment protects the right to be free from 'unreasonable searches and seizures,' but it is silent about how this right is to be enforced." ' " (*People v. Lange* (2021) 72 Cal.App.5th 1114, 1120 (*Lange*).)  Courts thus have employed the exclusionary rule as " ' "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." [Citation.]  "The rule . . . operates as 'a

judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " ' " (*Lange*, at p. 1120.)

While courts have traditionally utilized the exclusionary rule as part of " 'constitutional procedural due process in criminal cases,' " "[i]t 'is rarely applied in civil actions in the absence of statutory authorization.' " (*Park v. Valverde* (2007) 152 Cal.App.4th 877, 883 (*Park*).) The exclusionary rule is only involved in civil proceedings when they " 'so closely [identify] with the aims of criminal prosecution as to be deemed "quasi-criminal." [Citations.]' [Citation.] However, the 'suspension of an individual's driver's license is a civil remedy that is not penal in nature.' " (*Ibid.*)

Here, the trial court concluded application of the exclusionary rule was an appropriate remedy for the officer's failure to provide the statutory admonition. While Officer Phillips's failure to provide the admonition and subsequent misrepresentation regarding that admonition is highly concerning, the court erred in applying the exclusionary rule within the context of an APS hearing and the facts of this case.

To this end, we find *Gikas v. Zolin* (1993) 6 Cal.4th 841 (*Gikas*) and *Park*, *supra*, 152 Cal.App.4th 877 instructive. In *Gikas*, a driver was arrested for drunk driving. As relevant here, the court considered whether evidence suppressed in the driver's criminal action—based on the original stop and detention being unreasonable—was still admissible in the DMV administrative license suspension proceedings. (*Id.* at pp. 845, 857.) The court concluded such evidence remained admissible in the administrative proceedings. (*Id.* at pp. 858–859.) The court explained, "It is settled that the exclusionary rule does not apply to all administrative hearings," and found no

basis to "suggest[ ] the exclusionary rule must apply whenever there has been a suppression hearing in some criminal case." (*Id.* at p. 859.)

Park, *supra*, 152 Cal.App.4th 877 analyzed both *Gikas* and other cases addressing how courts should balance the exclusionary rule with administrative proceedings. (*Park*, at pp. 884–887.) The *Park* court noted the purpose of the exclusionary rule was primarily to deter law enforcement officers who may be tempted to employ unconstitutional methods to obtain evidence; a purpose that would not be furthered with the rule's application in the administrative context. (*Id.* at pp. 886–887.) The court thus concluded "the exclusionary rule is inapplicable to the DMV administrative proceedings . . . . We cannot ignore the fact that the criminal drunk driving proceedings and the DMV administrative proceedings serve different primary purposes— one to punish drunk drivers and one to get them off the streets. [Citation.] The suppression of evidence in the context of criminal proceedings, as was done here, should provide adequate deterrence of wrongful police conduct in recordkeeping. Although the suppression of evidence in the DMV administrative proceedings as well could provide some supplemental deterrent effect, it would only be at the expense of protecting the public from the drunk driver, and indeed, protecting the drunk driver from himself. In order to permit the primary purpose of the DMV administrative proceedings to be served, we conclude that the suppression of evidence in those proceedings is not required in this case." (*Id.* at p. 887.)

We agree with *Park*'s reasoning and likewise conclude the exclusionary rule does not apply to Kazelka's APS hearing. While Kazelka seeks to distinguish *Park* based on Officer Phillips's "egregious" conduct, we conclude the officer's failure to provide the statutory admonition and subsequent misrepresentation does not shift the balance here. Nothing in the record

indicates Officer Phillips engaged in physically or verbally threatening behavior to induce Kazelka to take the PAS test. Nor does the record indicate his subsequent misrepresentation regarding the admonition was intentional rather than careless error.

While Officer Phillips behaved improperly in failing to provide the statutory admonition and misrepresenting that fact on his subsequent report, we do not find his conduct rises to a level that would justify application of the exclusionary rule within an administrative hearing context. And Kazelka "has not shown that the DMV itself engaged in any misconduct of a type that should be deterred in the future." (See *Park*, *supra*, 152 Cal.App.4th at p. 883.)

### D. Kazelka Has Not Identified Any Constitutional Violation That Would Trigger the Exclusionary Rule

Finally, the trial court justified exclusion of the PAS test by analogizing Officer Phillips's error with that of a *Miranda* violation. This comparison also was in error.

"The exclusion of relevant evidence . . . is barred by the California Constitution's Right to Truth in Evidence provision, unless otherwise compelled by the federal Constitution." (*Williams*, *supra*, 28 Cal.4th at p. 415, citing Cal. Const., art. I, § 28, subd. (d); see also *Lange*, *supra*, 72 Cal.App.5th at p. 1120 [same]; *People v. McKay* (2002) 27 Cal.4th 601, 608 [California Constitution forbids exclusion of evidence as a remedy for an unreasonable search and seizure unless that remedy is required by the federal Constitution].)

"[T]he Fifth Amendment . . . protects against *compelled* testimonial self-incrimination," and *Miranda* is "designed to allow *full understanding and exercise* of this constitutional right in the inherently custodial

atmosphere of police custody." (*People v. Storm* (2002) 28 Cal.4th 1007, 1029.) Here, however, Kazelka does not demonstrate that the officer's failure to give the admonition infringed on his constitutional rights. Courts have long held there is no Fifth Amendment right to refuse to take a blood or breath test. (E.g., *Schmerber v. Cal.* (1966) 384 U.S. 757, 765.) In *Schmerber*, the Supreme Court explained that requiring an individual to participate in chemical blood testing did not compel the defendant to be a witness against himself and therefore did not implicate the Fifth Amendment. (*Schmerber*, at p. 764; see also *Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 119 ["California decisional law holds a police officer's mere failure to comply with the requirements of this state's implied consent law [Veh. Code, § 23612] does not equate with or amount to a violation of the arrestee's rights under the federal Constitution."].)

In addition, the U.S. Supreme Court has held that breath tests do not infringe on privacy rights. (*Birchfield v. N.D.* (2016) 579 U.S. 438, 461 ["Years ago we said that breath tests do not 'implicat[e] significant privacy concerns.' [Citation.] That remains so today."]; see also *People v. Bury, supra*, 41 Cal.App.4th at p. 1204 [PAS test " 'is simply another form of field sobriety testing[;] . . . [it is] no more intrusive than to ask [a suspect] to walk a straight line or perform other physical and verbal coordination tests.' "].)

Finally, we note Kazelka does not identify any Fourth Amendment violation. The administration of field sobriety tests upon detention of a driver suspected of being under the influence, for the purpose of determining whether probable cause exists to arrest, is merely a reasonable investigation, not an unreasonable search or seizure in violation of the Fourth Amendment. (*People v. Bennett* (1983) 139 Cal.App.3d 767, 770–771; see also *People v. Bury, supra*, 41 Cal.App.4th at p. 1204.)

Accordingly, the trial court erred in justifying exclusion of the PAS test by concluding Officer Phillips's conduct equated to a *Miranda* warning violation. To the contrary, Kazelka has failed to demonstrate Officer Phillips's conduct resulted in any federal constitutional violation.

## II. Due Process

Kazelka asserts for the first time that the administrative hearing violated his due process rights because the hearing officer acted as both an advocate and an adjudicator. He asserts his argument could not have been raised earlier because *California DUI Lawyers Association v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517, 532 (*DUI Lawyers*), on which he relies, was decided after the trial court proceedings.

" ' "A challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law." ' " (*Knudsen v. Dept. of Motor Vehicles* (2024) 101 Cal.App.5th 186, 210 (*Knudsen*).)

### A. Forfeiture

"The traditional rule is that 'a party must raise an issue in the trial court if they would like appellate review.' [Citation.] 'While " '[i]t is the general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived' " [citation], application of this principle is not automatic.' [Citation.] '[A] new theory raising a pure question of law on undisputed facts can be raised for the first time on appeal.' " (*Ramirez v. Dept. of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335 (*Ramirez*).)

Here, Kazelka does not raise a pure legal question because he challenges the scope of the hearing officer's conduct during the administrative proceedings. Moreover, Kazelka's argument that he was

unable to raise it prior to the *DUI Lawyers* decision rings hollow. To the extent the officer undertook a dual role as advocate and adjudicator, such conduct was known at the time of the administrative hearing and could have been objected to at that time or during the subsequent trial court proceedings. Moreover, *DUI Lawyers* was not the first case to consider these issues. "[T]his issue and similar issues have been the subject of prior case law." (*Ramirez, supra,* 88 Cal.App.5th at pp. 1335–1336, citing *Poland v. Dept. of Motor Vehicles* (1995) 34 Cal.App.4th 1128, 1134–1135 [due process challenge on ground " 'hearing officer cannot fairly or properly adjudicate the case because he or she is an employee of the Department and a proponent of evidence' "] and *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 548–549 [claims of biased tribunal " 'because City was both prosecutor and adjudicator' "].) Accordingly, we find the argument forfeited. However, even if it were not forfeited, his due process claim fails on the merits as discussed below.

### B. The Hearing Officer's Role Did Not Violate Due Process

In *DUI Lawyers*, the California DUI Lawyers Association (CDLA) sued the DMV based on, among other things, the DMV's practice of allowing a single individual to serve both as advocate for the DMV and hearing officer in APS hearings. (*DUI Lawyers*, *supra*, 77 Cal.App.5th at p. 530.) The court concluded APS hearings were subject to the general Administrative Procedure Act requirement that "[a] person may not serve as presiding officer in an adjudicative proceeding [if] [¶] (1) [t]he person has served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage." (*Id.* at p. 532, fn.4.) The court found the DMV's practice of allowing a single individual to occupy the role of both advocate and adjudicator created an unacceptable risk of bias and, thus, violated due process under the

Fourteenth Amendment and the California Constitution, article I, section 7. (*Id*. at pp. 532–533.)

While generally prohibited, the California Supreme Court explained the same individual in an administrative agency may be tasked with "developing the facts and rendering a final decision." (*Today's Fresh Start, Inc. v. L.A. County off. of Education* (2013) 57 Cal.4th 197, 220.)  As relevant to APS hearings, courts have concluded hearing officers may collect and develop the evidence and then render a decision without having acted as an advocate for the DMV or running afoul of due process rights.  (*Knudsen, supra*, 101 Cal.App.5th at p. 207; see also *DUI Lawyers, supra*, 77 Cal.App.5th at p. 533, fn. 5 ["CDLA concede[d] the DMV may task the same person with both collecting and developing the evidence and rendering a final decision."].)

To determine whether an individual's due process rights have been violated, courts must "assess[ ] the administrative record and the revocation decision to see if the public hearing officer actually acted as both and adjudicator *and* an advocate, or merely acted as an adjudicator and a collector and developer of evidence.  If the relevant documents demonstrate that the hearing officer did not act as an advocate, then the driver's due process right to an impartial adjudicator was not violated, and the constitutional issue is resolved.  If the relevant documents demonstrate that a public hearing officer actually acted as an advocate, then the driver's due process right to an impartial adjudicator is violated." (*Knudsen, supra*, 101 Cal.App.5th at p. 193.)

Here, Kazelka contends the hearing officer "acted as both an advocate and an adjudicator when she served the California Highway Patrol a subpoena for the maintenance records of the PAS device on August 2, 2019."

But apart from serving a subpoena for records, Kazelka does not identify any "advocacy" by the hearing officer. Nor does Kazelka assert the hearing officer mischaracterized any evidence or displayed actual bias, such as by leading questioning of the sole PAS test calibration officer witness. The hearing officer admitted the records regarding the PAS device without objection from Kazelka's counsel, and such evidence was of a type that would likely be entered into evidence in any APS hearing. Accordingly, the hearing officer did not act in the dual role of an advocate and adjudicator, and no due process error occurred.

## DISPOSITION

The order of the trial court dated July 30, 2021, reversing the DMV's suspension of Kazelka's driver's license is reversed. The trial court is directed to enter an order denying Kazelka's petition for writ of mandate and reinstating the DMV's suspension order. The DMV is entitled recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
PETROU, J.


WE CONCUR:


_____
TUCHER, P. J.


_____
RODRÍGUEZ, J.


*Kazelka v. DMV*/A163664

## *Kazelka v. DMV (A163664)*

Trial Court:          Lake County Superior Court

Trial Judge:          Hon. Michael S. Lunas


Attorneys:

Rob Bonta, Attorney General of California, Chris Anthony Knudsen, Senior Assistant Attorney General, Fiel Dizon Tigno, Supervising Deputy Attorney General, Brandon Kareem Fields, Deputy Attorney General for Defendant and Appellant.

Office of William Conwell and William Conwell for Plaintiff and Respondent.